Per Curiam :
This case was referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed January 11,1966. Exceptions to the commissioner’s findings and recommendation for conclusions of law were filed by the plaintiff. Defendant excepted to portions of the commissioner’s opinion. The case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. The majority of the court is of the view that, in this very close case, it cannot overturn the findings of the trial commissioner that the plaintiff was not disabled at the time of his separation from the service. Plaintiff is, therefore, not entitled to recover and the petition is dismissed.
Dureee, Judge, dissents. (See dissent following the conclusion of the commissioner’s opinion.)
Commissioner Bernhardt’s opinion,* as modified by the court, is as follows:
The plaintiff’s case is that, at the time of his release from active duty as a commander in the Navy on January 19,1946, he was permanently incapacitated for active duty by reason of physical disability (rectal incontinence) incurred in line of duty and incident to his extended active service, and that the action of the Board for Correction of Naval Records in denying, without a hearing, his request that his records be corrected to reflect his disability retirement as of 1946, was *541 arbitrary, capricious, unsupported by and contrary to tbe evidence, and unlawful. Conversely, tbe defendant contends that tbe plaintiff was fit for military duty at the time of his release and that tbe action of the Correction Board denying plaintiff’s application has not been shown by him to be as charged.
While on active duty in the Navy as a surgeon in 1944 the plaintiff underwent a hemorrhoidectomy to relieve a condition from which he had suffered for some years prior to duty but which had apparently become aggravated in service. In the course either of the operation, or (more likely) as a result of an abscess which required incision and draining, the sphincter muscle was damaged. The double-barreled sphincter muscle is a key element in nature’s ingenious apparatus to automatically open and close the anal orifice to allow or prevent bowel movements, operating much in the puckering manner of a drawstring on a laundry bag. In plaintiff’s case an area of scar tissue gathered over part of the damaged sphincter muscle and so impaired its functioning that ever since, infrequently but unpredictably, the plaintiff has suffered the embarrassment of partial rectal incontinence, a condition wherein at times he lacks control over the emission of soft stools and digestive gases. There is no surgical or other cure available that does not involve an unacceptable risk of causing complete incontinence, but dietary restraint can reduce the incidence. There seems to be no doubt that the condition, mild and moderate as it has been pronounced to be, originated with the operation or the infection sequelae. The only question before the Correction Board was whether the condition at the time of plaintiff’s separation in January 1946 was of a degree sufficient to disqualify him from performance of active duty. Correspondingly, the traditional role of the court on review “is to determine not whether the claimant was unfit for service at the time of his release, but rather whether the finding of the Secretary of the Army [Navy in this case] that the serviceman was fit was so arbitrary, capricious, or unsupported by evidence as to be contrary to the applicable principles of law. * * *.” Johnston v. United States, 157 Ct. Cl. 474 (1962).
*542 The plaintiff ran the familiar gamut of applications for disability compensation and retirement pay before the agencies constituted for that purpose. This started with his application in February 1946 to the Veterans Administration, which produced a service-connected 0 rating in 1949 but was subsequently, in 1959, increased to 10 percent on the Veterans Administration disability rating schedule, and never more, despite plaintiff’s unsuccessful appeals to the Veterans Administration Board of Veterans Appeals for a 80 percent rating. Curiously, when the plaintiff was first advised in 1946 by the Veterans Administration that service-connection had not been established, he responded by disclaiming interest in compensation or any other form of relief unless his condition developed into a handicap in the future, an indirect but clear admission on his part that in 1946 he did not consider himself handicapped, presumably for functioning as a civilian doctor.[1]
From February 1960 through April 1963 the plaintiff prosecuted a claim for disability retirement before the Navy, including an application to the Board for Correction of Naval Records and, through it, consideration by a series of medical boards established by the Navy to review and pass on the medical aspects of such claims. The favorable ruling of the Physical Evaluation Board (i.e., officialese for “retiring board”; see Friedman v. United States, 141 Ct. Cl. 239, 158 F. Supp. 364 (1958)) following a hearing in March 1962 was unanimously reversed by successive review panels and agencies (Physical Review Council in April 1962, Physical Disability Review Board in October 1962, and the Surgeon *543 General thereafter), and ultimately by the Correction Board itself in April 1963.
Before getting into the core of plaintiff’s quarrel with the administrative proceedings, certain inferences may be derived from the plaintiff’s delayed application to the Correction Board 15 years after his release, and his interim activities. Although the plaintiff testified that he was ignorant of his disability retirement rights at the time of his discharge, this is difficult to credit for two reasons. First, as a Navy doctor it would be natural to assume that the shoptalk among his fellow doctors, particularly around the time of wholesale separations in late 1945 when the plaintiff’s was processed, would have involved disability retirement situations and thus acquainted him sufficiently with such matters to prompt him to institute proceedings for himself if he felt entitled. Second, he did file an application with the Veterans Administration in 1946 as mentioned above for the ostensible purpose of establishing the existence of his condition should it later worsen. The combination of these circumstances produces the conclusions that (a) the plaintiff was oblivious of neither his condition nor his legal remedies at the time of his discharge, and (b) the condition was so moderate at the time of his separation that in his private professional opinion it was not sufficient to disqualify him for active duty and thus entitle him to retirement for disability.
Casting further doubt on the validity of plaintiff’s contentions as to the extent of his disability at the time of his separation and in the ensuing 13 years of his service in the Naval reserves [2] after his separation, are the repeated physical clearances he received hi that period of time, some of them bearing his own seal of approval and all of them silent as to any disqualifying rectal disability. It is no doubt true that annual qualifying physicals in the reserves are often cursory affairs that are not definitive of actual ailments, and equally true that plaintiff was strongly induced to conceal physical defects due either to an innate reluctance to advertise his embarrassment or to a natural desire to complete 20 years in the reserves *544 to earn longevity retirement rights, or both. Bnt such affirmative testimonials to continued good health set up at least some kind of presumption for plaintiff to overcome. Unquestionably the condition of which he complains existed and still does, but its severity, frequency and disabling nature are uncertain in view of his constant readiness for tours of active duty, no matter how sedentary and physically undemanding he now claims them to have been.
Adverting now to the plaintiff’s charges of defective administrative procedures, there are several urged. The major complaint seems to be that the Physical Evaluation Board was the only board in the administrative chain considering his claim that afforded him a personal hearing, the inference being that had the others done so they might have reached the same favorable conclusion announced by the Physical Evaluation Board and later upset on review by others. The Board for Correction of Naval Records, established pursuant to the authorization contained in 10 U.S.C. 1552 (1958 ed.), is directed by regulations (section 723.3(e), Title 32, Code of Federal Regulations) to review each application for correction “to determine whether to authorize a hearing or to deny the application without a hearing.” Thus in discharging its statutory duty to determine whether sufficient evidence has been presented to indicate probable material error or injustice, the Correction Board may do so without a hearing, in its discretion, as was done in the case under consideration, despite the plaintiff’s request for such. On the other hand the Physical Evaluation Board, the retiring board established pursuant to 34 U.S.C. 411 (1946 ed.), is directed by 34 U.S.C. 412 (1946 ed.) to give the applicant a “full and fair hearing * * * if he shall demand it.” The plaintiff received a hearing before the Physical Evaluation Board and is, of course, satisfied with its favorable recommendation that he was incapacitated for active service at the time of his release in 1946 by reason of his rectal condition, which was stated to be permanent and service-connected.
Plaintiff was not given hearings before either the Physical Review Council or the Physical Disability Review Board, both of which disagreed with the favorable recommendation of the Physical Evaluation Board. No explicit statutory *545 sanction has been found for the Physical Review Council as it has for the Physical Disability Review Board (10 TJ.S.C. 1554), but it is apparently created under the general authorization of the Secretary of the Navy to prescribe regulations to carry out his duties of determining the fitness for active duty of members of the armed forces under his jurisdiction (10 TJ.S.C. 1216). The regulations governing the Council appear in section 725.501 et seq. of Title 32, Code of Federal Regulations. They describe the function of the Council to be “to review the proceedings and recommended findings of physical evaluation boards” (sec. 725.504), and to forward its recommendations to the Secretary of the Navy for final action (sec. 725.506). They do not provide the claimant a right to a personal hearing before the Council, and his rights are restricted to the filing of a rebuttal statement to the recommended substitute findings of the Council in disagreement with those of the Physical Evaluation Board. Thus the plaintiff’s complaint that he was not permitted to appear before the Council is without merit to the extent a hearing is not provided by the regulations. If the plaintiff has already had, or waived, a hearing before the Evaluation Board, no particular deprivation of due process is apparent in the preclusion of a hearing before the Council so long as the Council has the benefit of examining the complete record in the course of its review. The plaintiff’s further objection that the Council’s report to the Correction Board failed to discuss and analyze the plaintiff’s evidence before the Evaluation Board is also without surface merit to the extent that the regulations do not require the Council to do more than report to the Secretary (actually in our case to the Correction Board, the Secretary’s alter ego) its substitute findings, which was done. It would seem, however, that a bare statement by the Council to the Correction Board that it disagrees with the Evaluation Board’s recommendations would not be nearly so helpful in the Correction Board’s deliberations as would a detailed discussion of the Council’s reasons for the disagreement which would give the claimant and the Correction Board the full benefit of knowing the facts and medical opinions which persuaded the Council to disagree with the Evaluation Board. The regulations neither require nor forbid the Council to *546 present its detailed reasons to the Correction Board and, while this may not be a desirable omission, the absence of detail does not deprive due process, for the action of this way-station to the Correction Board does not prevent that Board from a full consideration of the record, aided by an audience to the claimant if it chooses. If any error were said to exist in the brevity of the Review Council’s advice to the Correction Board, it would occur later should the latter body blindly adopt the Council’s bare recommendation without obviously independent deliberation.
There is a question as to whether the jurisdiction of the Physical Disability Review Board was properly invoked, but even if it was properly invoked its proceedings were irretrievably flawed by its failure to accord the plaintiff a hearing to which section 725.611 of the regulations entitled him. Rather, the eventual report of the Physical Disability Review Board to the Correction Board states that the members of the Board were “of the opinion, since the records were voluminous and complete, the interests of the petitioner and of the Government in this case are so well protected that a full hearing with personal appearance before the Board will not be necessary.” The failure of the Physical Disability Review Board to at least give the plaintiff the refusal of a hearing was in clear violation of the regulation, so the advice given by the Physical Disability Review Board to the Correction Board that the plaintiff was fit for duty may be considered a nullity for this further reason. The plaintiff also contends that the said report was skimpy in its recital of facts, but whether the regulations require more than was submitted need not be adjudged in view of the voiding of the proceedings for other reasons.
Faced as it was with a conflict in the opinions and advice of the Physical Evaluation Board and the other boards which subsequently considered the claim, the Correction Board then referred the claim to the Bureau of Medicine and Surgery (i.e., the Surgeon General) for an advisory opinion. The Bureau concurred in the adverse recommendations of both the Physical Review Council and the Physical Disability Review Board, but the report from the Bureau was prepared by one of the three officers who had signed the report previously *547 submitted to tlie Correction Board by the Physical Review Council. No citation of authority is required to reach the conclusion that the Bureau’s report to the Correction Board should be disregarded as unacceptable, for its preparation by one who participated in the adverse decision of a prior board so tainted it as to rob it of its character as the independent advice of the Bureau. In other words, the Correction Board asked the Bureau of Medicine and Surgery its advice, but to all intents and purposes received instead the warmed-over advice of the Physical Review Council, in effect.[3] It is not necessary to consider the plaintiff’s further objection that the Bureau’s report to the Correction Board did not fully reflect the evidence considered, nor whether procedurally the Correction Board should restrict its solicitation to information rather than opinion, for the authorship of the Bureau’s report is enough to void its utility.
On April 9,1963, the Correction Board advised the plaintiff that “the preponderance of the medical opinion in your case is to the effect that you were fit for duty at the time of your release from active duty.”, and that, accordingly, he had not established “the existence of probable error or injustice in your case.” Plaintiff then appealed to the Secretary of the Navy and enclosed a host of supporting documents, including the reports of two civilian doctors who had examined him. This application was referred back to the Correction Board. In November 1963 the Undersecretary of the Navy advised the plaintiff that the Correction Board, after a review of the additional material submitted, “continues of the belief that there is insufficient evidence to warrant a finding that you were incapacitated for the performance of your duties in 1946, * * The Undersecretary ruled that the action of the Correction Board appeared to be proper. The plaintiff contends that the Correction Board erred in not granting him a hearing as requested, and in abbreviating its report by omitting a recital of the facts, both *548 medical and otherwise, supporting its recommendation to the Secretary.
Shortcomings and irregularities in the administrative procedures, both claimed and actual, have been defined. What are their logical legal consequences? In disability retirement proceedings the Correction Board becomes a clearing house into which the various advices and information from other medical groups are funneled. It rests with the Correction Board to resolve disagreements among the contributed advices in the form of a decision which should be the product of its own independent deliberations based upon whatever records and testimony it procures or may entertain. It may consider but should not feel bound by the opinions of contributing groups. If these groups differ in their submitted conclusions, or if the procedures in certain of them are so substantially defective as to preclude reliance on their advice, there may be cast upon the Correction Board a heightened obligation to permit live evidence, and in its ultimate report to discuss the evidence in sufficient detail to demonstrate both to the claimant and the Secretary that the recommended conclusion was reached after a thorough, independent consideration of all available facts and is not a mere parroting or wholesale borrowing of collateral opinions. Should this not occur in situations demanding it, as in Smith v. United States, 168 Ct. Cl. 545 (1964), or should it appear patent that the Correction Board has rested a substantial though measureless part of its decision on the surrogate opinions of panels which should have been ignored because of their defective procedures, it would not then be just to the claimant to accord the customary degree of finality to the Correction Board’s decision, or for it to enjoy the protection of the substantial evidence rule on judicial review. Bather, a decision so arrived at should be susceptible to review on the basis of a simple preponderance of the administrative evidence augmented by judicially produced de novo evidence.
Applying this standard to the case at bar, the elimination of the recommendations to the Correction Board of the Physical Disability Beview Board and the Bureau of Medicine and Surgery, because of procedural deficiencies, would leave legitimately before the Board only the report of the *549 Physical Evaluation Board and the Physical Review Council, the one being favorable to plaintiff and providing a more satisfactory assurance of full consideration after a hearing, and the other adverse to plaintiff being merely a review of the cold record without the benefit of a personal hearing because not provided by the regulations. Under these circumstances the Correction Board would have been well-advised to have given the plaintiff the hearing he requested, or at least to have prepared a much more comprehensive report in which the factual and medical aspects of the claim would be treated in detail rather than in summary form. The absence of both of these precautions creates an undesirable and perhaps erroneous impression that the Correction Board was influenced unduly by the numerical preponderance of opinions it received rejecting plaintiff’s contentions rather than by the merits of the claim. It then becomes the province of the court to supply that which was required of the Correction Board below, namely, a full-dress review of the plaintiff’s contentions, taking into account the assorted administrative opinions but relieved of their pressure.
The shortcomings of the Correction Board’s report are not overcome by the presence in the Board’s file of a memorandum prepared by a staff employee which recites in detail the facts and medical aspects of the plaintiff’s claim, including the statements of civilian practitioners who examined plaintiff, and concludes with a recommendation that the application be denied. Even if the Correction Board gave full consideration to this staff recommendation, as presumably it did, it would not cure or relieve the deficiency of the report which the Board rendered to the claimant and to the Secretary as a recommendation, for that report quite clearly produces the impression that the Board relied exclusively on the mathematical balance of the adverse medical opinions it had received. Had the report been couched in the detail contained in the staff employee’s memorandum, as it should, it would then not have been open to the criticism that it was a mere summation of collateral opinions rather than the product of independent deliberation by the Board. The retirement rights of members of the military services *550 are valuable property rights and deserve the same jealous protection in their administrative consideration as they would receive in a judicial proceeding. To that end the administrative proceedings need not parallel judicial ones, but they must at least avoid not only arbitrary action, but the appearance of arbitrary action as well, and minimally must observe the requirements established by law and implemented by regulations.
That Correction Boards have frequently been held to high standards of performance is evident in the opinions of this court. Thus, in Friedman, v. United States, supra, where the Air Force Correction Board denied plaintiff’s application on the strength of an advisory opinion obtained from the Air Force Review Council, an organization which had no official position in the appeal hierarchy set up for review of disability retirement claims, the court held that the Board had “abdicated its statutory function and duty” and that its failure to “base its conclusions on the official record before it, appears to us to be arbitrary, capricious and contrary to law.” No such abdication appears in the case at bar, but the principle is wholesome and significant. Again, in Hutter v. United States, 170 Ct. Cl. 517, 345 F. 2d 828 (1965), the decision of the Air Force Correction Board was held to be arbitrary, capricious, erroneous, and not supported by substantial evidence in denying plaintiff’s application on the advice of the Surgeon General that the plaintiff had been properly evaluated prior to separation by the Veterans Administration. “The Correction Board was under no duty to defer to the conclusion reached by the Veterans Administration if there was substantial evidence before the Board to the contrary.” And at page 525:
This court has stated that the Correction Board is arbitrary when it follows an ex parte opinion of the Surgeon General which is inaccurate and contrary to the evidence. * * *
In the present case the Veterans Administration’s determination in 1946 that the plaintiff’s disability was not service-connected, and in 1949 that it was but rated 0, had been mentioned in the reports received by the Correction Board, *551 but tlie later increase in 1959 to 10 percent bad not been referred to.
At trial before tbe court the plaintiff testified, as did the two doctors whose written reports bad previously been considered by tbe Correction Board. Findings 28 and 29 recapitulate their testimony, but add little besides embellishment to their written advice to the Correction Board. Dr. Bryant thought that the plaintiff’s condition when he examined him in 1961 was probably slightly more severe than it had been in 1946 at the time of discharge, because of loss of muscle tone associated with aging. He was of the opinion that plaintiff’s condition in 1946 would have interfered with the efficient performance of his military duties as a Naval surgeon in a reasonable manner. Dr. Murphy examined plaintiff in May 1963, and felt that the plaintiff’s sphincter muscle is probably more relaxed now than in 1946, but that his general rectal condition is about the same, described as a “mild type of disability.”, but one which handicapped plaintiff in performing his Naval duties.
Navy Department Court-Martial Order No. 12-1946, December 1946, provides guides to physical disability for retirement purposes prevailing in the Navy prior to the enactment of more flexible standards in the Career Compensation Act of 1949, 10 U.S.C. 1201 (1958). It says at page 395 that “Incapacity apparently exists under the laws [i.e., for retirement purposes], when an officer’s physical condition is such that he cannot perform his duties in a reasonable maimer.” And at page 396: “Basically, therefore, it would appear that inability to perform the duties which an officer could normally be called upon to perform should be the determining factor as to whether an officer should be retired.” Further at page 394, quoting from 27 Op. Atty. Gen. 14, 18; L.B.N.A. 598: “The law does not say that he must be incapable of performing his duties well, but that he must be incapable of performing them at all, or, in other words, he must be unable to so perform them as to reasonably fulfill the purposes of his employment.”
The essence of plaintiff’s contention is that he could not discharge the duties of a Naval surgeon at all times in 1946 in a reasonable manner because he ran the constant risk *552 of having to suspend critical operations due to a sudden onset of his particular disability. It is not established that the normal military life of a doctor, even one classified as a Naval surgeon, is so unremittingly strenuous as to disqualify one with plaintiff’s mild degree of physical impairment, bothersome though it must be at times. Certain, of its manifestations which would be socially detrimental in a civilian hospital would be much less so or pass unnoticed in a less fastidious military environment. There may be times, such as in the heat of handling battle casualties in a theater of war, when the plaintiff, if assigned to emergency surgical duties, would have been unable always to acquit himself in a reasonably efficient manner because of his impediment. But it is arguable that these occasions would be the exception rather than the rule, and that an officer of plaintiff’s rank and age at the time of his separation might well have been assigned to less onerous duties more commensurate with his particular skills and infirmities, and for which his condition would interpose less hindrance. The Naval standards do not require that the officer be physically qualified to perform well all duties which he might encounter, but merely that he be physically capable of performing those which he would normally, be called upon to perform in such manner “as to reasonably fulfill the purposes of his employment.” All service doctors are not equipped or called upon to exercise their calling under extreme conditions as a steady diet, and reason must be read into the disability retirement standards so as to adjust the man to the situation.
It is true that Navy Department Court-Martial Order No. 12-1946, supra, at page 400, provides that an officer who is physically qualified for only limited duty as opposed to full duty is entitled to disability retirement, as was the case in Weiner v. United States, 148 Ct. Cl. 445 (1960). However, there was no question of the present plaintiff being assigned to limited duty, and all that has been discussed thus far relates to his capacity to perform full duty.
Under all the facts of the case and the governing law and regulations, even if the decision of the Correction Board should not be reviewable under the standard of the substantial evidence criteria because of the formal defects surround *553 ing its administrative processing, on the basis of the administrative record plus the plaintiff’s evidence furnished the court it must be concluded that the plaintiff has failed to establish by a simple preponderance of the evidence that he was physically incapacitated to perform active duty as a Naval surgeon at the time of his discharge in January 1946. Accordingly, his petition should be dismissed.

The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

The plaintiff’s career before and after his service stint is not particularly germane to the present inquiry. Suffice findings 3 and 15 to say, at no time has he engaged in the private practice of medicine or surgery in the common meaning. His assertion of his intention to do so after his discharge being prevented by his war-caused condition does not square with the record of his long predilection for “industrial medicine”. During his entire professional career on either side of his military service he has been primarily a compensation examiner in the full-time employ of either Aetna Casualty & Insurance Co. (to 1949), or the New York State Bureau of Workmen’s Compensation (presently), aside from a brief session with Aetna in 1943 in charge of the medical program on a large construction operation in Chicago. The record does not reveal how much surgery has been involved in plaintiff’s industrial medicine background, or precisely what that field of medical practice entails, but it would appear from the plaintiff’s testimony that its requirements nicely accommodate the partial reetal incontinence from which he suffers in that he can master his own time and activities.

 Plaintiff was transferred to the Retired Reserve of the Naval Reserve on January 1,1960, pursuant to 10 U.S.C. 1376 (a).

 Section 725.608 of Title 32, Code of Federal Regulations, specifically prohibits a member of the Physical Evaluation Board, the Physical Review Council, Naval Retiring Board or Board of Medical Survey which acted in the case of the party claimant from acting as a member of the Physical Disability Review Board in the same case. The spirit inhering in this regulation was violated by the author of the Surgeon General’s advisory opinion being a member of the Physical Review Council.