**Robert E. DZIALO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 492–80C.**

United States Claims Court.

June 5, 1984.

---

John A. Everhard, Falls Church, Va., attorney of record for plaintiff.

Colvin W. Grannum, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

In this second phase of subject military pay case, plaintiff seeks disability retirement benefits allegedly due him, notwithstanding his involuntary discharge from the United States Marine Corps on June 30, 1978. At that time, plaintiff had served in the Marine Corps for 17 years, but was statutorily discharged after he was twice passed over for promotion to the rank of major. Subsequent thereto, plaintiff filed a timely petition in our predecessor court, the United States Court of Claims, seeking

disability retirement benefit payments from and after July 1, 1978, or, in the alternative, reinstatement to his former rank of captain with appropriate back pay and allowances. Plaintiff's disability claim, raised for the first time in said petition, alleges that he was unfit for duty as of the date of his involuntary discharge because he suffered from psychoneurosis, hay fever, migraine headaches, and neck and back pain.

In response to the parties' cross-motions for summary judgment, the Court of Claims, in an opinion disseminated on May 5, 1982, granted defendant's motion for summary judgment in part and dismissed plaintiff's alternative claim for reinstatement to his former position. *Dzialo v. United States*, 230 Ct.Cl. 506, 677 F.2d 873 (1982). With respect to plaintiff's claim for disability retirement pay, however, the court held that plaintiff had *not* exhausted his administrative remedies, and remanded the case to the Board of Correction of Naval Records (BCNR or "Correction Board") for consideration on the merits. On remand, the BCNR found on October 20, 1982, that plaintiff was *not* unfit for duty at the time of his discharge (June 30, 1978), and hence he was ineligible for disability retirement benefits. As a consequence of the foregoing, on April 11, 1983, plaintiff filed with this court a "Notice of Action on Remand and Motion for Trial on the Merits," praying in the alternative for an order permitting a renewal of his motion for summary judgment filed in the first Court of Claims proceeding.[1] Defendant thereafter filed its motion for summary judgment on June 13, 1983.

This court has thoroughly reviewed the entire administrative record, as well as the submissions of the parties. For the reasons stated hereinafter, the court is of the opinion that there is no genuine issue of material fact, that the BCNR's decision is clearly supported by substantial evidence, and that it is neither arbitrary, capricious,

nor contrary to applicable statutes and regulations. Accordingly, defendant's motion for summary judgment shall be granted.

## FACTS

Plaintiff enlisted in the United States Marine Corps in October 1961, and served therein until 1978, when he was involuntarily discharged at the rank of captain. He was first commissioned as a second lieutenant in 1966, and was assigned on a tour of combat duty to Vietnam in 1967. In a statement contained in the administrative record, plaintiff alleges that prior to his assignment to Vietnam, he was "a well-adjusted individual." He avers, however, that "the intensity of my Viet Nam experience, further complicated by my first wife's psychological problems ..., mentally crippled me." According to his statement, plaintiff's psychological problems began after nine months of his tour in Vietnam, when his first wife was hospitalized for a nervous breakdown, and he returned to the States on emergency leave. (Shortly thereafter, upon his request, he received a humanitarian transfer.)

Specifically, three months after returning to the States, in June 1968, plaintiff suffered what he termed his first "anxiety attack," during which he purportedly "lost all control of motor functions." He was taken to the hospital, given an injection that he believed to be valium, and released. Following this anxiety attack, plaintiff contends that he never again felt normal, because of his fear of "losing control," as well as the guilt he felt from "deserting" his companions in Vietnam via his humanitarian transfer. At various times after 1968, plaintiff reported a number of physical ailments, such as migraine headaches, neck and back pains, and hay fever, but was not hospitalized for any of these ailments. His medical records reveal that he suffered on various occasions from dizzy spells, anxiety, and tension through-

---

**1.** In connection with the foregoing, on May 22, 1984, there was filed in this court "Plaintiff's Motion In The Alternative To Renew Previously Submitted Cross-Motion for Summary Judgment."

out the 1970s and was prescribed with medication, most notably valium.

Plaintiff was promoted to the rank of captain in 1969. He returned to Vietnam on a tour of duty in 1971, after which his wife was involved in an automobile accident which resulted in the death of the other driver. Plaintiff alleges that this incident was a major factor contributing to his subsequent psychological problems. Indeed, shortly after his second return to the States, he suffered a second anxiety attack similar to the first. Plaintiff continued to serve, thereafter, as a communications officer at various posts around the United States from 1972 until his involuntary discharge on June 30, 1978.

In 1976, plaintiff went to see a base psychiatrist, a Dr. Kamm, at the suggestion of another base physician from whom plaintiff had requested valium. In a report written on May 21, 1976, Dr. Kamm stated that plaintiff "demonstrates a mixed neurosis," with "elements of neurotic depression," but exhibited no signs of neurological impairment or active psychosis. In his recommendation, Dr. Kamm prescribed outpatient psychotherapy, as well as tofranil (an anti-depressant medication) and other medication for anxiety and insomnia. Dr. Kamm's medical report concluded, however, that plaintiff was *"fit for full duty."* A letter report by a Dr. Kneipp dated May 11, 1981, to counsel for the plaintiff states that five weeks after his initial report, Dr. Kamm apparently changed his diagnosis of plaintiff, noting on a prescription that plaintiff suffered from "chronic endogenous depression, with vegetative signs and phobic symptoms." Nevertheless, no medical report, filed by either Dr. Kamm or his successors, ever indicated that plaintiff was *unfit* to perform active duty.

Shortly after plaintiff's initial visit and the resulting report, *supra,* Dr. Kamm was transferred, and thereafter, plaintiff consulted a Dr. Khan, also a base psychiatrist. Plaintiff intimates that Dr. Khan was negligent in his treatment, inasmuch as he did not provide psychotherapy (because of a belief that it was not necessary) and only saw plaintiff for a few brief follow-up visits after 1976. Dr. Khan apparently wrote on plaintiff's clinical record, however, on October 26, 1977, that "Capt. Dzialo has reported that he has felt relief with Tofranil. Will continue Tofranil . . . ."

In 1976, and again in 1977, plaintiff was passed over for promotion to the rank of major by a selection board, which events admittedly exacerbated his depression. Following the second passover, the Marine Corps offered plaintiff the opportunity to continue on active duty in the grade of Gunnery Sergeant to enable him to complete 20 years of active service and qualify for a pension. He declined to accept an appointment at that grade level, and was therefore discharged on June 30, 1978, pursuant to 10 U.S.C. § 6382(a) (1976) (currently at 10 U.S.C. § 632 (Supp. IV 1980)). Plaintiff states that when he was given his last physical examination prior to discharge in June 1978, he indicated to the examining physician that he suffered from depression. He further alleges that the examining physician told him to see Dr. Khan, and that Dr. Khan "said there was nothing wrong with [him]." The report of this final physical examination notes that plaintiff was diagnosed as having "mixed neurosis" in 1976, but that he was "now put on Tofranil," which produced "good results." The report concluded that plaintiff was "PQ [physically qualified] to perform all duties of his rank at sea and in the field."

Supportive and corroborative of the foregoing are plaintiff's "fitness reports," evaluations of his job performance compiled throughout his career as an officer by his superiors, which provide the most probative evidence in the administrative record of the effect of plaintiff's psychological problems on the performance of his duties. These reports, almost uniformly, give plaintiff a rating of "excellent" or at the very least, "above average." Reports throughout the period 1968 to 1976 are saturated with references to plaintiff being a "supremely conscientious officer," a "consistent performer," a "very valuable project officer," and "a valuable asset to this

unit." He is described as "very involved in the dynamics of human relations involving his men," "very effective in all aspects of human relation dynamics," "technically proficient across the spectrum of [his] duties," and "in excellent physical condition." [2] Moreover, a letter written in February 1978 by plaintiff's commanding officer gives plaintiff a similarly exemplary evaluation, stating that plaintiff "applie[s] himself assiduously to ... assignments, acquitting himself with distinction" in a range of duties that would ordinarily be given to two officers. The only fitness report to mention any emotional difficulties of plaintiff was for the period from June 30, 1971 to November 24, 1971, and refers to "some serious family problems ... that have affected his performance." Significantly, this report was removed from plaintiff's records, for promotion evaluation purposes, by the BCNR in 1978 as a result of plaintiff's vehement protest against its inclusion because it was "prejudicial" and issued without an opportunity given for him to comment.

Following the first passover for promotion to major in 1976, plaintiff sought relief from the BCNR, claiming that he had wrongfully been denied a promotion because a highly complementary fitness report was missing from the folder considered by the selection board. This request for relief was denied by the BCNR on January 26, 1977. On three occasions thereafter from 1977 to 1979, plaintiff filed further applications for relief with the BCNR, claiming in each instance that he was wrongfully denied promotion because of the improper inclusion and/or lack of various documents in his selection folder. Although the BCNR agreed to delete the fitness report for the period June 30 to November 24, 1971, described *supra*, the Correction Board continued to uphold the two passovers. At no time during the fore-

going appeals before the BCNR did plaintiff claim that he was entitled to disability retirement benefits.

After his discharge from the Marine Corps in June 1978, plaintiff obtained civilian employment with the Defense Communications Agency in an Engineering/Management capacity. Although plaintiff concedes that supervisory reports about his job performance, after his resumption of civilian employment, were "very favorable" and that he "received a job-increase promotion," he contends that during this period his depression reached a new low point. He began to see a private psychiatrist, a Dr. Travis, in December 1978, who prescribed sinequan and one hour of psychotherapy per week. Dr. Travis noted in a report, dated July 1, 1980, that although plaintiff had had "an acceptable response" to his initial treatment with tofranil while in the Marine Corps, his depression grew worse after the two passovers for promotion, and particularly after his discharge from the Marine Corps.

Plaintiff also consulted two other private psychiatrists in 1980 and 1981, Drs. Hunt and Kneipp, respectively. Dr. Hunt reported, based on interviews and a series of tests, that plaintiff exhibited the behavior of a "troubled" person, *i.e.*, he had "a significant psychopathology in the direction of an anxiety [sic], depressed, withdrawing state," and that his "basic problems [were] of long standing." Dr. Kneipp concluded, based on three one-hour interviews in January 1981 and Dr. Hunt's test data, that plaintiff's condition was properly diagnosed by the base psychiatrist, Dr. Kamm, in his second evaluation as "chronic endogenous depression." He further concluded that plaintiff's condition had its genesis in the events surrounding his initial tour of duty in Vietnam, and that this illness "was not

---

**2.** The only negative report found in the record was a "Personnel Management Division Comment" dated August 6, 1979, which refers to several features that indicate that plaintiff's first tour of duty in Vietnam in 1967–1968 was "distinctly less than competitive," as well as indications from other tours of duty that plaintiff's ratings were lower than those of the majority of his contemporaries, even though they were at least "above average." The report made no suggestions to the effect that any physical or mental illness rendered him unfit for duty or even detracted from his performance.

given adequate recognition and consideration in evaluating Captain Dzialo's performance prior to his involuntary retirement in June 1978." None of these three private doctors made any comment, however, with respect to whether the illness suffered by plaintiff rendered him unfit for military duty as of the date of his discharge (June 30, 1978).

In addition to the foregoing, and in response to plaintiff's January 1979 application, the Veterans' Administration (VA) ruled in July 1979 that plaintiff was eligible for VA benefits because his "nervous condition has been evaluated as 50% disabling effective [July] 1, 1978." The VA also ruled that plaintiff was not entitled to disability benefits for his hay fever, migraine headaches, fracture of the left arm, and neck and back conditions because he did not suffer a 10% ratable disability.

Plaintiff's resulting petition to the Court of Claims was then filed on September 30, 1980, in which he raised his claim for disability benefits for the first time, together with the alternative claim for reinstatement to the rank of captain and appropriate back pay and allowances. As was noted, *supra*, the court dismissed plaintiff's alternative claim, but remanded plaintiff's claim for disability benefits to the BCNR in May 1982. Following this remand, plaintiff applied to the BCNR for the correction of his records on July 23, 1982, requesting that his records show that he was retired for physical disability with a rating of 50% because he was "a victim of disabling delayed stress syndrome." Along with his application, plaintiff submitted his own statement, statements of his present and former wives, reports of Drs. Travis, Hunt, and Kneipp, and the briefs and attached documentary evidence originally submitted to the Court of Claims. Upon receipt of plaintiff's submissions, the BCNR thereafter requested comments and a recommendation regarding plaintiff's physical condition from the President of the Central Physical Evaluation Board (CPEB), enclosing, in addition to the foregoing submissions, a Miscellaneous Correspondence and Orders Jacket, a Selection Board Jacket, and plaintiff's medical records and VA records.

On August 13, 1982, the CPEB rendered an advisory opinion after reviewing the foregoing enclosures. It found that "there is no evidence that [plaintiff's] Depressive Neurosis was sufficiently disabling as to have precluded his continued employment on active duty in the U.S. Marine Corps." This conclusion was based on the fact that plaintiff had obtained medical treatment on many occasions during his career, and on each occasion was returned to active duty, where his performance evaluations indicated "that he was able to perform his assigned duties in a more than satisfactory manner." Moreover, the CPEB found no evidence that plaintiff's performance had deteriorated in the years prior to his discharge.

Plaintiff's counsel was forwarded a copy of said advisory opinion and was offered an opportunity to respond thereto. Plaintiff accepted this opportunity on October 13, 1982, by submitting a rebuttal to the CPEB opinion, to which was attached two letters addressed to his counsel. This submission related, *inter alia*, to the alleged negligence of the Marine Corps' doctors and the circumstances surrounding his declination of the appointment to gunnery sergeant after his two passovers. At no point in the proceedings before the BCNR did plaintiff request a hearing, however.

Subsequently, on October 20, 1982, the BCNR issued a two-page opinion in which it denied plaintiff's application. The Correction Board stated that it had considered all of the foregoing material that had been submitted to the CPEB, in addition to the CPEB advisory opinion, plaintiff's response thereto, and pertinent statutes, regulations, and policies. The Board further stated that "[a]fter careful and conscious consideration of the entire record, ... insufficient evidence had been presented to indicate factual error or injustice." The only *specific* evidence cited by the BCNR to justify this finding was the fact that plaintiff had been offered an appointment to continue on active duty at the rank of gunnery ser-

geant, and that he had declined said appointment. Plaintiff's Notice of Action on Remand and Motion for Trial on the Merits was then filed with this court on April 11, 1983.

## DISCUSSION

### I.

Plaintiff maintains in his motion for a trial on the merits that a genuine issue of material fact exists with respect to plaintiff's fitness for duty at the date of his discharge, because the Court of Claims acknowledged as much in its opinion of May 5, 1982. *See* 230 Ct.Cl. at 511–12. He then argues that the BCNR's decision of October 20, 1982 "merely rubber-stamped" defendant's contention that plaintiff was fit for duty without a hearing, thereby leaving the factual issue of plaintiff's fitness for duty unresolved.

Defendant responds that no genuine issue of material fact exists because the BCNR ruled in defendant's favor on the issue of plaintiff's disability. As a consequence, defendant contends that this court need only decide, as a matter of law, whether the decision of the Correction Board was arbitrary, capricious, or unsupported by substantial evidence.[3]

 Our analysis of these contentions begins with the long-settled proposition, derived from general principles of administrative law, that:

> As a general rule in the disability area, the court is limited to determining whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes and regulations.[4]

*Craft v. United States*, 210 Ct.Cl. 170, 179, 544 F.2d 468 (1976); *see also Harris v. United States*, 177 Ct.Cl. 538, 541 (1966). Thus, in these cases, it is not the province of this court to factually determine, *ab initio*, whether plaintiff was unfit for military service at the time of his release. *De Cicco v. United States*, 230 Ct.Cl. 224, 228–29, 677 F.2d 66 (1982). In determining whether the foregoing standard has been satisfied, this court is permitted to augment the administrative record "in certain close cases," where appropriate, with evidence derived at a *de novo* trial. *Id.* at 229; *see also Brown v. United States*, 184 Ct.Cl. 501, 518, 396 F.2d 989 (1968). However, if the party requesting a trial on the merits presents no new evidence that was not considered by the Board, a *de novo* hearing in this court would be merely an unnecessary duplication of the deliberation by the Correction Board. In such circumstances, it is entirely inappropriate for this court to hold a new trial on the merits. *See De Cicco*, 230 Ct.Cl. at 229–30, 677 F.2d 66.

---

3. At a status conference held by this court on March 11, 1983, the parties expressly agreed that this case would be handled through motions for summary judgment, with counsel for plaintiff stating, "I agree with [counsel for defendant].... The only basis that could be presented at this time [in this court] ... would be on the question of the arbitrariness ... of the Correction Board."

4. The "arbitrary and capricious" standard of review is applicable to decisions in the disability area because of the discretion given to the military under the relevant statute, 10 U.S.C. § 1201, which reads in pertinent part as follows:

> Upon a determination *by the Secretary concerned* that a member of a regular component of the armed forces entitled to basic pay, ... is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, ..., *if the Secretary also determines that—*
>
> (1) based upon accepted medical principles, the disability is of a permanent nature;
>
> (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
>
> (3) ...
>
> *     *     *     *     *     *
>
> (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans' Administration at the time of the determination; and ...
>
> (i) the member has at least eight years of service computed under section 1208 of this title;
>
> *     *     *     *     *     *

(Emphasis added.)

■ This is precisely the situation that pertains in the instant case. Plaintiff herein has proffered neither one scintilla of new evidence nor one averment of fact that was not considered by the BCNR and contained in the administrative record. Thus, this court is of the opinion that the instant case is thoroughly ripe for disposition by summary judgment, inasmuch as the BCNR decision resolved the last remaining *genuine* issue of material fact. Plaintiff's motion for trial on the merits must therefore be denied so as to avoid unnecessary duplicitous factual hearings, and alternatively, its motion to renew its motion for summary judgment must be granted.

## II.

Plaintiff's motion for summary judgment presents only *one* argument pertinent to his request for disability retirement benefits—namely, that the Navy's decision to discharge him without such benefits was arbitrary and capricious because it did not previously refer him to a Physical Evaluation Board. This contention is now totally devoid of merit, inasmuch as it was rendered moot by the review of plaintiff's case by the CPEB on August 13, 1982, after the remand by the Court of Claims.

In addition to the foregoing, plaintiff's opposition to defendant's summary judgment motion attacks the Board's decision, that he was not "unfit for duty by reason of disability [on June 30, 1978]," as arbitrary and capricious, because the BCNR did not hold a hearing and also did not supply sufficient reasoning to support its conclusion. Defendant opposes this contention by arguing that the BCNR's decision gave adequate reasons of its own and incorporated the more thoroughly reasoned CPEB opinion.

Plaintiff's contention is supported by the rule that agency decisions bearing on significant rights (such as the denial of disability benefits) cannot be upheld under the "arbitrary and capricious" standard if the grounds for their decisions are not set forth in writing. *See Dunlop v. Bachowski,* 421 U.S. 560, 571–74, 95 S.Ct. 1851,

1859–61, 44 L.Ed.2d 377 (1975); K. Davis, Administrative Law Treatise § 29.01–6 (1982 supp.); *see also Istivan v. United States,* 231 Ct.Cl. 671, 676, 689 F.2d 1034, 1038 (1982); *Craft,* 210 Ct.Cl. at 180–81, 544 F.2d 468. In the military pay context, the Court of Claims noted in *Beckham v. United States,* 183 Ct.Cl. 628, 636, 392 F.2d 619 (1968), that:

> A *naked conclusion* and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing ... *is inimical to a rational system of administrative determination and ultimately inadequate....* "In these circumstances [summary and sketchy findings and reasoning by the administrative Board] we cannot give as much deference to the Board's determination as if it had given detailed findings to support, and fuller explanations of the reason for, its conclusion...." (Emphasis added) (Citations omitted).

Plaintiff relies heavily on the foregoing language to urge that the BCNR determination of October 20, 1982, amounted in substance to little more than a "naked conclusion," because the Board merely recited an itemization of the evidence it considered, without engaging in a informative analytical discussion of the evidence, containing detailed findings or the pointed reasoning which led to the conclusion(s). The court agrees with plaintiff *to the extent that* the BCNR's decision, standing alone on its face, does not provide a precise reasoned analysis for its conclusions. Although this court does not sanction the shortcomings in the Board's opinion, we believe, nevertheless, that to the extent the Board's action was erroneous, it was harmless error. *See Selman v. United States,* 723 F.2d 877, 881 (Fed.Cir.1983). This conclusion is compelled by the policies underlying the requirement for written explanations, considered in light of the circumstances of the instant case.

■ The reasons underlying the requirement that written explanations must be given for discretionary agency action

have been often stated, and are primarily the following: to inform the aggrieved person of the basic grounds for an adverse decision, and to enable a court to properly review the agency decision if it is challenged. *See Dunlop,* 421 U.S. at 571–74, 95 S.Ct. at 1859–61; *Matlovich v. Secretary of the Air Force,* 591 F.2d 852, 857 (D.C.Cir.1978); *see also Craft,* 210 Ct.Cl. at 181, 544 F.2d 468. Hence, it has not been required that the administrative boards express the reasons for their decisions in *great* detail. *Craft,* 210 Ct.Cl. at 181, 544 F.2d 468. Instead, "[a]ll that is required is sufficient notification of the serviceman to permit him, if he may, to rebut the board's action." *Id.; see also Imhoff v. United States,* 177 Ct.Cl. 1, 8 (1966). In assessing the sufficiency of the rationale for an agency decision, the courts, in turn, cannot supply a reasoned basis for the decision that the agency itself has not given, but will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned "by reference to clearly relevant sources other than a formal statement of reasons." *Selman,* 723 F.2d at 881; *see also Bowman Transportation, Inc. v. Arkansas-Best Freight Systems, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974).

In the instant case, the BCNR utilized a procedure authorized by regulations when it sought to benefit from the expertise of the CPEB, an office within the Department of the Navy, by means of an advisory opinion. *See* 32 C.F.R. § 723.11(a) (1982). Upon its completion and dissemination, the advisory opinion of the CPEB was furnished to plaintiff's counsel by letter dated August 18, 1982, in addition to the BCNR, in order to afford plaintiff an opportunity to submit a response to the BCNR.[5] It is important to note that the CPEB's opinion was the only opinion sought and received

by the BCNR on the issue before it—whether plaintiff was fit for active duty at the time of his discharge.[6] The ultimate BCNR report cited said advisory opinion as a factor it considered, adopted its conclusion, and did not vary in any significant respect from the reasoning contained therein.[7]

■ In light of the foregoing, it is clear beyond cavil that the path taken by the Department of the Navy to reach its decision incorporated the findings of the CPEB, even though the BCNR did not state explicitly that the CPEB advisory opinion was of dispositive weight in its decision. It is similarly clear from the record that plaintiff was adequately and sufficiently informed of the basis of the BCNR's decision so as to enable him to effectively rebut its conclusion. Plaintiff cannot in good conscience contend otherwise, because his argument, *infra,* that the BCNR's decision is unsupported by substantial evidence is based entirely on the CPEB's advisory opinion. Moreover, plaintiff does not contend that the CPEB's advisory opinion did not provide adequate reasoning for its conclusions. Such a suggestion, even if made, clearly would have no merit, inasmuch as the CPEB provided a number of reasons for its conclusions, discussed *infra,* which were based on the substantive evidence in the administrative record. Hence, the alleged insufficiencies of the BCNR decision of October 20, 1982, cannot be deemed to overcome the presumption of regularity and render said decision arbitrary and capricious. *See Selman,* 723 F.2d at 881.

■ Additionally, plaintiff's contention, that the denial of disability benefits was arbitrary and capricious because the BCNR did not grant him a personal hearing before either itself or the CPEB, is clearly mis-

---

5. Plaintiff's response (October 13, 1982) to the CPEB advisory opinion, discussed *supra,* amounted in substance to little more than a conclusion based on evidence already contained in the administrative record.

6. This is in addition to the alleged comment of Dr. Khan, *supra.*

7. The one significant item of evidence cited by the BCNR (the Marine Corps' offer of an appointment to plaintiff as gunnery sergeant) was also noted by the CPEB as one of the indicia that plaintiff was fit for active duty at the time of his discharge.

placed. It is well settled from case law and regulations that the decision by military correction boards of whether to grant a personal hearing is discretionary,[8] and will not be disturbed by a court unless this decision itself is arbitrary and capricious. *Garner v. United States,* 230 Ct.Cl. 941, 944 (1982); *Flute v. United States,* 210 Ct.Cl. 34, 41, 535 F.2d 624 (1976); *Armstrong v. United States,* 205 Ct.Cl. 754, 764 (1974).

A threshold requirement before a *denial* of a hearing can be deemed to be arbitrary and capricious is, of course, that the concerned individual must first *request* a hearing before the agency. *See Shoreline Associates v. Marsh,* 555 F.Supp. 169, 177 (D.Md.1983); *Gables by the Sea, Inc. v. Lee,* 365 F.Supp. 826, 829 (S.D.Fla.1973). Nowhere in the record can it be seen that plaintiff ever made such a request. Moreover, even if the foregoing requirement did not exist, plaintiff has set forth no facts or arguments, such as the existence of evidence not set forth in writing before the Board or defects in procedures followed by the CPEB, to indicate that the BCNR's issuance of its decision without a hearing was in any way arbitrary or capricious. *See Garner,* 230 Ct.Cl. at 944; *Harris,* 177 Ct.Cl. at 548; *Boland v. United States,* 169 Ct.Cl. 145, 151 (1965).

### III.

Finally, plaintiff also appears to argue that the decision of the BCNR should be set aside by this court because it is not supported by substantial evidence. Specifically, he contends that the conclusion of the CPEB opinion, considered by the BCNR, was improper inasmuch as it relied on his fitness reports, *supra,* which do not show medical conditions or the ability to perform world-wide duty. Defendant, in its motion for summary judgment, vigorously contests this assertion, urging that the BCNR decision, premised on the entire administrative record, was supported by substantial evidence. The court agrees with defendant's contention.

First, plaintiff's argument that his fitness reports should not have been a basis for the Navy's decision is without merit. It is true that acceptable performance evaluations for specialized duties performed in the past should not always be the *dispositive* basis for a decision that an individual is fit to perform the general duties of his grade and rank. *Imhoff,* 177 Ct.Cl. at 7. Nevertheless, an individual's ability to perform the duties assigned to him after a disability arose is one of the legitimate indicia of fitness entitled to significant probative weight in a decision regarding eligibility for disability benefits. This is particularly true, whereas in the case at bar plaintiff continued to perform the general duties of his grade and rank up to the date of his discharge. *Id.* Accordingly, this court finds nothing improper in the CPEB's utilization of plaintiff's fitness reports as one of several indicia used to determine that he was fit for duty as of June 30, 1978.

Secondly, as the CPEB advisory opinion notes, the record is replete with indicia that plaintiff was fit to perform the duties assigned to him as of the date of his discharge, and virtually devoid of definitive evidence which directly shows that he was *not* so fit as of said date. The reports of all examining physicians and psychiatrists while plaintiff was in the Marine Corps concluded that although plaintiff suffered from certain ailments, he was fit to perform active duty both prior to, and at the

---

**8.** The applicable regulation provides, in pertinent part:

Each application and the available military and naval records pertinent to the corrective action requested will be reviewed *to determine whether* to authorize a hearing, recommend that the records be corrected without a hearing, *or to deny the application without a hearing.*

32 C.F.R. § 723.3(e)(1) (1982). (Emphasis added.)

time of, his discharge. In fact, plaintiff admitted that, on his exit examination by Dr. Khan, at which time he (plaintiff) raised the issue of his depression, Dr. Khan stated that there is "nothing wrong with [him]." This evidence is undoubtedly buttressed by plaintiff's performance evaluations, which corroborate the fact that he was able to perform his duties in a more than adequate manner from the time his disability arose in 1967–1968 until his discharge, with no noted deterioration in his performance. The fact that plaintiff himself vigorously contested his passovers for promotion before the BCNR prior to 1980, seeking to remove all indicia from the record that he was unfit to serve, provides further support for the CPEB's conclusion that "it is clear that [plaintiff] could have continued to serve in his capacity as a Commissioned Officer had his career not been terminated by statutorily required separation," pursuant to 10 U.S.C. § 6382(a) (1976).

██ Moreover, the evidence in the administrative record which, according to plaintiff, contradicts the conclusion of the BCNR, is insufficient to render the evidence favoring said conclusion "insubstantial." The fact that plaintiff received a 50% disability rating from the VA, higher than the 30% minimum rating required by 10 U.S.C. § 1201, is in no way determinative on the issue of plaintiff's eligibility for disability retirement pay. A long line of decisions have so held in similar circumstances, because the ratings of the VA and armed forces are made for different purposes. *See, e.g., De Cicco,* 230 Ct.Cl. at 231, 677 F.2d 66 (60% VA rating); *Finn v. United States,* 212 Ct.Cl. 353, 356, 548 F.2d 340 (1977) (60% VA rating); *Bennett v. United States,* 200 Ct.Cl. 635, 643 (1973) (50% VA rating); *Lord v. United States,* 2 Cl.Ct. 749, 754 (1983) (70% VA rating).

██ Additionally, the reports of plaintiff's private psychiatrists, which plaintiff maintains are in conflict with the conclusion of the BCNR, also cannot serve as the basis for overturning the finding of a correction board that is supported by other substantial evidence. *De Cicco,* 230 Ct.Cl. at 232, 677 F.2d 66; *Finn,* 212 Ct.Cl. at 356, 548 F.2d 340. This is particularly true in the instant case, where the private psychiatrists' examinations took place between two and three years *after* plaintiff's discharge, and where their reports do not set forth any conclusions as to whether plaintiff *was fit* to perform his military duties *at the time of his discharge.* In fact, the report of one of plaintiff's private psychiatrists, Dr. Travis, can be reasonably read as indicating that plaintiff's condition only became serious subsequent to, and as a result of, his passovers and discharge by the Marine Corps.

## CONCLUSION

From all of the foregoing, it is clear to this court that plaintiff has not demonstrated the need for a trial *de novo,* inasmuch as plaintiff has proffered no new operative facts not considered by the BCNR. Moreover, with respect to the parties' cross-motions for summary judgment, the Court of Claims has often said that:

It is not the function of this court to substitute its own judgment for that of the board. Plaintiff has the burden of proving by clearly convincing proof that the board or the Secretary acted arbitrarily or capriciously.

*Newman,* 185 Ct.Cl. 269 at 276; *quoted in De Cicco,* 230 Ct.Cl. at 233, 677 F.2d 66. After reviewing the submissions of the parties, the administrative record, and applicable law, there can be no question that plaintiff has not sustained the requisite burden of proof. Consequently, this court is compelled to hold that the decision of the military to deny plaintiff disability retirement pay was not arbitrary, capricious, or unsupported by substantial evidence.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for a trial on the merits is DENIED;

2. Defendant's motion for summary judgment is GRANTED;

3.  Plaintiff's motion to renew his motion for summary judgment is GRANTED;

4.  Plaintiff's motion for summary judgment is DENIED; and

5.  Plaintiff's petition shall be DISMISSED.