Jay A. PARTHEMORE

v.

The UNITED STATES.

No. 169–81C.

United States Claims Court.

Dec. 13, 1982.

---

Henry E. Gallagher, Jr., Paul E. Crawford, Wilmington, Del., for plaintiff. Connolly, Bove & Lodge, Wilmington, Del., of counsel.

Jane W. Vanneman, Dept. of Justice, Commercial Litigation Branch, Civ. Div., Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant. Nancy R. Sills and Charles R. Fulbruge, III, Major, JAGC, U.S. Army, Washington, D.C., of counsel.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

### OPINION

WHITE, Senior Judge.

The plaintiff in this action seeks a judgment ordering that the Army correct his military records to show that he was permanently retired for medical disability, with a 100-percent disability rating, effective May 9, 1972, and that he be paid disability retired pay on such basis, retroactive to May 9, 1972.

The material facts are not in dispute; and the parties have filed cross-motions for summary judgment.

After hearing oral argument, it is concluded, upon the basis of the agreed facts as reflected by the documents before the court, that the defendant is entitled to a judgment as a matter of law.

While serving on active duty as an Army Reserve officer in West Berlin, Germany, the plaintiff noticed a mole on his upper left arm. The mole was removed surgically in West Berlin on April 24, 1969, and an initial diagnosis indicated a malignant melanoma. The plaintiff was transferred to the Walter Reed Army Hospital in Washington, D.C., where, on May 23, 1969, a wide local excision was made on the upper left arm. An examination of lymph nodes removed from the arm revealed that several of them contained metastatic tumors.

On December 3, 1969, an Army Medical Board concluded that the plaintiff was unfit for continued military duty, and recommended that the plaintiff "be presented to a Physical Evaluation Board for consideration of separation from the military service."

An informal Physical Evaluation Board (PEB) met to consider the plaintiff's case on January 27, 1970. The PEB concluded that the plaintiff was unfit for further military service, and recommended that he be placed on the Temporary Disability Retired List (TDRL), with a 30-percent disability rating. The plaintiff was released from

active duty, and he was placed on the TDRL effective February 20, 1970. Subsequently, it was discovered that, pursuant to a change in an Army regulation (change 2, USAPDA 635–1), the plaintiff should have received a 100-percent disability rating. The mistake was corrected, retroactive to February 20, 1970.

Pursuant to AR 635–40, the plaintiff was required to undergo a physical reexamination of his condition every 18 months. On the first reexamination, no recurrence of the cancer was detected, but the Medical Board concluded that the plaintiff remained unfit for military service and should be retained on the TDRL. On December 16, 1971, the PEB concurred in the Medical Board's findings and recommendations.

On May 9, 1972, the USAPDA regulation on malignant tumors was changed. The regulation, as a result of the change (change 13 to USAPDA 635–1, appendix D7), distinguished between tumors with metastases and those without metastases. The regulation provided in pertinent part on and after May 9, 1972, that "[a]n individual in whom a malignant tumor with metastases was diagnosed will be permanently retired with a 100 percent rating." The plaintiff remained on the TDRL after May 9, 1972, as the Army believed that the change in the regulation did not affect the plaintiff's status.

The plaintiff was reexamined again in 1973; and, again, no recurrence of melanoma was found. Once more, however, he was found to be unfit for military service.

The plaintiff was reexamined for the last time on August 1, 1974, at the Walter Reed Army Hospital. No recurrence of melanoma was found; and the examining physician concluded that the plaintiff was fit for active military duty. A Medical Board approved the finding of fitness; and the matter was referred to a PEB for consideration of the question whether the plaintiff should be removed from the TDRL.

Pursuant to AR 635–40, the plaintiff appeared before a formal PEB on March 19, 1975. The plaintiff relied on a report prepared by Wallace H. Clark, Jr., M.D., Professor and Chairman of the Department of Pathology at the Temple University Medical School. Dr. Clark concluded that, statistically, the plaintiff had a "significant risk" of developing a recurrence of melanoma until May 1979 (10 years after the original diagnosis) and a "slight risk" until 1989 (20 years following the diagnosis). The plaintiff also argued that, pursuant to USAPDA 635–1, change 13, previously mentioned, the 1969 diagnosis of malignant melanoma with metastases entitled him to permanent retirement. The PEB, however, concluded that the plaintiff was fit for active military duty.

On May 15, 1975, the plaintiff was notified that, because he had been found to be physically fit for active military duty, (1) he would be removed from the TDRL, and (2) he was eligible to apply for a return to active commissioned status in the Army, if he wished to do so.

The plaintiff was removed from the TDRL effective February 11, 1976; and, as he did not apply for a return to active commissioned status, he was honorably discharged from the Retired Reserve.

The plaintiff sought review of the PEB determination by the United States Army Physical Disability Agency (USAPDA). The USAPDA upheld the PEB finding of fitness, and declined to grant plaintiff the requested relief.

The plaintiff finally submitted an application to the Army Board for Correction of Military Records (ABCMR), asking that his records be corrected to show that he was permanently retired for medical disability, with a 100-percent disability rating. The ABCMR on September 14, 1977, denied the plaintiff's application, determining that insufficient evidence had been presented to indicate the existence of probable error or injustice.

The present litigation followed.

At the outset, it is important to note that numerous court decisions (*e.g., Snell v. United States,* 168 Ct.Cl. 219, 227 (1964); *Stephens v. United States,* 174 Ct.Cl. 365, 371–74, 358 F.2d 951, 954–55 (1966); *Beck-*

ham v. United States, 183 Ct.Cl. 628, 635–36, 392 F.2d 619, 622 (1968); Finn v. United States, 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977)) have said that a determination by the head of a military department, or one of his delegates, cannot be disturbed unless the determination is clearly arbitrary, capricious, not supported by substantial evidence, or contrary to applicable laws and regulations.

■ The plaintiff's first contention is that the Army failed to follow its own regulation when it denied the plaintiff permanent disability retirement with a 100-percent disability rating. The regulation relied upon is change 13 to USAPDA 635–1, appendix D7, which, as mentioned earlier in the opinion, provided in pertinent part that "[a]n individual in whom a malignant tumor with metastases was diagnosed will be permanently retired with a 100 percent rating."

It is true that the plaintiff, at one time, was diagnosed as having had a malignant tumor with metastases. The plaintiff's diagnosis, however, was made in 1969, some 3 years before the regulation change on which he relies was made in 1972. The facts before the court establish that there was no recurrence of the melanoma after May 1969, and that the plaintiff did not have a malignant tumor when the language on which he relies was incorporated in the regulation on May 9, 1972, or at any time thereafter.

The Government correctly contends that the applicable regulation (change 13 to USAPDA 635–1, appendix D7) did not provide for retroactive application. Moreover, ¶ 7–5, AR 635–40, provides that a PEB's reevaluation of a member's TDRL status must be "guided by the same medical fitness standards, disability rating principles, and policies relating to the application of such standards and principles as were in effect when the member's name was placed on the TDRL." When the PEB acted on the plaintiff's status in 1975, the PEB properly applied the same medical fitness standards, etc., that were in effect when the plaintiff was placed on TDRL in February 1970.

It must be noted that, at least until August 1974, the Army officially characterized the plaintiff as being unfit for military service. In December 1971 and again in August 1973, a PEB determined that the plaintiff remained unfit for military service because of his original diagnosis of malignant melanoma with metastases. However, the facts clearly show that these findings of unfitness were based upon the uncertainty of a recurrence of melanoma, and not on the continued existence of the disease in the plaintiff. As previously mentioned, there was no recurrence of the disease.

It is concluded, therefore, that the Army did not violate its regulations in finding the plaintiff fit for active military duty in 1975 and in removing him from the TDRL.

■ The plaintiff's other contention is that the PEB's final determination in 1975 of the plaintiff's fitness for duty is not supported by substantial evidence. In this connection, the plaintiff's medical expert testified before the PEB that there was at least some risk until 1989 that the disease would recur. On the other hand, all the agreed facts in the record establish that the plaintiff has not experienced a recurrence of melanoma since the 1969 operations were performed. The 1975 PEB, weighing these factors, found that, despite the possibility of recurrence, the plaintiff was fit for active military duty. There is really nothing in the facts tending to cast doubt on the PEB's finding and to indicate that the plaintiff was, in fact, unfit for active military duty at the time when he was removed from the TDRL.

It must be concluded that the plaintiff has failed to sustain his burden of establishing by "cogent and clearly convincing evidence" (Stephens v. United States, supra, 174 Ct.Cl. at 371–72, 358 F.2d at 954) that the Army's determination of fitness was arbitrary, capricious, or not supported by substantial evidence.

Finally, the facts before the court indicate that the plaintiff did not sustain any financial detriment as a result of the

Army's failure to place him on the permanent disability retired list after the promulgation of the May 9, 1972, regulation change on which he relies.

In the first place, the plaintiff remained on the TDRL from May 9, 1972, until February 11, 1976, with a 100-percent disability rating. During this period, he received the same amount of disability retired pay that he would have received if he had been placed on the permanent disability retired list.

Then, when the plaintiff was found to be physically fit by the PEB in 1975, the Army informed the plaintiff that he was eligible to apply for a return to active commissioned status in the Army as of the time of his removal from the TDRL. It is inferred from this—and there is nothing in the record to indicate otherwise—that the Army was prepared to restore the plaintiff to active military duty, with the full pay and allowances of his commissioned grade, if he wished to return to active duty. It apparently was the plaintiff's choice, rather than the Army's, that he was not restored to active military duty.

Thus, it appears from the papers before the court that, up until the time of the filing of the complaint in this case, the plaintiff had not sustained any financial detriment as a result of the Army's refusal to place him on the permanent disability retired list.

This court's general jurisdiction, like that of its predecessor, the United States Court of Claims, is limited to money claims against the Government (*see Austin v. United States,* 206 Ct.Cl. 719, 723, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975)); and the court cannot grant ancillary relief except as an incident to a pecuniary remedy (*Michienczi v. United States,* 207 Ct.Cl. 484, 492 (1975)). Accordingly, even if the plaintiff were correct in his contention that the May 9, 1972, regulation change on which he relies was applicable to his case and the Army should have

placed him on the permanent disability retired list pursuant to that change, the court, absent entitlement to a money judgment, could not direct the Department of the Army to place the plaintiff on the permanent disability retired list.

*Conclusion*

For the reasons stated in the opinion, the plaintiff's motion for summary judgment is denied and the defendant's cross-motion for summary judgment is granted, with the complaint [1] to be dismissed.

It is so ordered.

---

1.  The plaintiff's pleading was filed as a petition under the rules of this court's predecessor, the