**Lahti Patrick KIRWIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 258–89C.**

United States Claims Court.

June 21, 1991.

Kenneth M. Carpenter, Topeka, Kan., for plaintiff.

Reginald T. Blades, Jr., Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen, and Asst. Director Thomas W. Petersen, for defendant.

## OPINION

LYDON, Senior Judge:

In this military pay case, plaintiff challenges a decision by the Board for Correction of Naval Records (BCNR)[1] denying his request to have his military records corrected to reflect a medical discharge, rather than an honorable discharge, and denying his request to be placed on the permanent disability retirement list.[2] Plaintiff alleges that he is currently suffering from Post-traumatic Stress Disorder (PTSD), precipitated by events that occurred during plaintiff's service in the military for almost nine years, and that he was suffering from undiagnosed PTSD at the time of his military discharge in 1978. Consequently, plaintiff seeks to have his name placed on the permanent disability retirement list, with concomitant retroactive disability pay.

Defendant has moved for dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to RUSCC 12(b)(4), and alternatively for summary judgment. Plaintiff opposes defendant's motions, and has cross-moved for summary judgment. The par-

---

1. The BCNR is a civilian board which "may correct any military record when [the Secretary of the Navy] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552.

2. Under 10 U.S.C. § 1201, a member of the military may be entitled to collect disability retirement pay if he is determined to be "unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay." However, the disability must be "permanent" as determined by accepted medical principles, the disability must not be the result of the service member's intentional misconduct or willful neglect, nor incurred during a period of unauthorized absence, and the disability must have at least a 30% VA rating. See 10 U.S.C. § 1201.

ties have not requested oral argument and the court is of the view that oral argument is not necessary under the circumstances of this case. For the reasons discussed below, the court finds merit in defendant's position.

### FACTS

Plaintiff Lahti Patrick Kirwin was first diagnosed as suffering from PTSD in August of 1982 while hospitalized in a Veteran's Administration (VA) hospital in Kansas.[3] Since that time, he has been diagnosed as suffering from various personality disorders, alcohol and marijuana abuse, and PTSD. Plaintiff alleges his PTSD had its genesis in various traumas he suffered while serving in the military from 1969 to 1978, including combat duty in Vietnam and Thailand.

On October 10, 1969, plaintiff was drafted into the United States Marine Corps at eighteen years of age. The administrative record indicates that plaintiff's childhood and youth were normal and he exhibited no unusual behavior problems. Having been raised as a Seventh Day Adventist, and having attended church schools for most of his youth, plaintiff requested military duty as a conscientious objector. Plaintiff's mandatory entrance physical examination upon induction into the Marines revealed no physical or psychological abnormalities. Plaintiff contends that, during basic training, he suffered physical and verbal abuse from drill instructors as well as from other trainees, in an effort to compel plaintiff to surrender his conscientious objector status. Plaintiff believes that his PTSD began to

manifest itself as a result of this harassment. Ultimately, plaintiff did surrender his status as a conscientious objector, and adapted well enough to military life to be promoted to Sergeant E-5.

During plaintiff's first two tours of duty, he received "average" to "excellent" ratings for conduct and efficiency. He also received several military decorations, including the Vietnam Campaign Medal, the Service Medal and the Navy Unit Commendation. On August 6, 1971, plaintiff was released from active duty, but he reenlisted for another tour of duty on October 14, 1971. In 1972, plaintiff was sent to Da Nang, Vietnam, where he served as a security guard in supply for three months. Thereafter, he was sent to a combat zone in Thailand where he served six months as a perimeter guard. As a security guard, plaintiff claims he was repeatedly subjected to sniper, rocket and mortar attacks, but was under strict orders not to return fire. During one incident, plaintiff recalls being blown through a wall during rocket fire, but apparently he was not seriously injured. There is no corroboration for this episode in his military or medical records. Plaintiff characterizes his experience in Thailand as "light to heavy combat assault" in which he continuously faced life-threatening situations. Plaintiff admits to taking several human lives during the course of combat, which he claims caused him great emotional distress because killing conflicts with his religious upbringing.[4]

Plaintiff alleges that he first began to experience symptoms of PTSD at Camp

---

**3.** The American Psychiatric Association publishes the *Diagnostic and Statistical Manual of Mental Disorders* (3d ed. 1980) (DSM III), which defines PTSD as a syndrome that manifests itself in

the development of characteristic symptoms following a psychologically traumatic event that is generally outside the range of usual human experience.... The stressor producing this syndrome would evoke significant symptoms of distress in most people.... The trauma may be experienced alone (rape or assault) or in the company of groups of people (military combat).... The traumatic event can be reexperienced in a variety of ways. Commonly, the individual has recurrent painful, intrusive recollections of the

event or recurrent dreams or nightmares.... Diminished responsiveness to the external world, referred to as "psychic numbing" or "emotional anesthesia," usually begins soon after the traumatic event.... In the case of a life-threatening trauma shared with others, survivors often describe painful guilt feelings about surviving when many did not, or about the things they had to do in order to survive. DSM III § 309.81 at 236.

**4.** Plaintiff alleges that he was involved in military activities in Thailand that still remain classified. Plaintiff's military records indicate that he was involved in the operations of Task Force Delta in Thailand for six months during 1972.

Pendleton, when he returned from Thailand. He began to drink alcohol heavily to avoid recurrent disturbing thoughts and nightmares about his experience in Thailand. Upon his return to Camp Pendleton, plaintiff nevertheless reenlisted for overseas duty and was sent to Okinawa, Japan. During his service in Japan, plaintiff was promoted to sergeant. When he again returned stateside, plaintiff began to have what he characterizes as "serious behavioral problems." For example, within six months after his return to the United States, plaintiff was arrested for driving while under the influence of alcohol (DUI), and in 1972 he was sent to Long Beach Naval Hospital for sixty days of alcohol treatment. Upon his release from the hospital, although plaintiff was not diagnosed as an alcoholic, he was not permitted to return to his unit, and was transferred instead to the Alameda Naval Air Station, where he spent the last two years of his military career. During that time, plaintiff contends that he caused disciplinary problems, including possession of alcohol and marijuana, and was picked up three more times for DUI.

On May 20, 1978, plaintiff was given an honorable discharge from the military, although his discharge was classified as RE–4 to prevent plaintiff from reenlisting when he tried to do so. Plaintiff alleges that his RE–4 discharge supports the conclusion that he was suffering from PTSD at the time of his discharge, and was therefore "unfit for duty." Defendant, on the other hand, concludes from his military records that plaintiff's disciplinary problems and poor work habits induced the RE–4 discharge.

On May 9, 1978, just prior to his discharge, plaintiff was given a pre-separation physical examination. In the Report of Medical History that plaintiff was required to complete as part of the examination, he answered "no" to the question of whether he had ever had, or presently had "nervous

trouble of any sort." Plaintiff also signed a mandatory Statement of Understanding indicating that he had been informed of his duty to advise the examining physician if he felt that he had a "serious defect or condition that interferes with the performance of [his] military duties." Plaintiff's statement indicated only that he was currently taking no medication and that he was experiencing "bad back trouble." As a result of the physical examination, plaintiff was declared "fit for full duty" and thus eligible for discharge. Although plaintiff now challenges that physical examination as "cursory," he did not challenge it at any point in the prior administrative proceedings.[5]

After his discharge in 1978, plaintiff held a variety of law enforcement positions, beginning in October 1978, when he was hired by the Topeka, Kansas Police Department. In March 1980, plaintiff was hired to be the City Marshall of Rossville, Kansas, where he stayed until October 1981. In December 1981, plaintiff was hired by the Sabetha Police Department, where he worked until January 1982, when he became Deputy Sheriff in Nemeha County, a position he was forced to resign in July 1982 due to drunk driving charges which appear to be related to plaintiff's motorcycle accident in July 1982, although the record is not clear on this point. As a result of his motorcycle accident, plaintiff was admitted to the VA hospital in Topeka, Kansas, where he underwent psychiatric evaluation.

On August 6, 1982, plaintiff entered the Vietnam Stress Treatment Program at the VA Medical Center in Topeka, Kansas, where he remained until October 18, 1982. He was readmitted four days later on October 22, 1982, apparently for drug-related problems, and remained until March 9, 1983. During the time he spent in the stress treatment program, plaintiff was diagnosed as suffering primarily from PTSD, and secondarily from "hysterical personality disorder" and alcohol and marijuana abuse. Upon his discharge in March 1983,

5. Defendant maintains that plaintiff's failure to advise the examining physician of a known defect or condition that would interfere with the performance of his military duties constitutes a waiver of plaintiff's right to further evaluation of that defect or condition, citing *Huffaker v. United States*, 2 Cl.Ct. 662, 665 (1983).

the physician's written summary stated that plaintiff was "competent" and "was able to return to work, not considered disabled at this time."

On September 28, 1982, plaintiff filed a claim with the VA seeking service connection and a disability rating for PTSD, which the VA denied on January 31, 1983.[6] In its denial of the claim, the VA noted that "[t]here is a history of traumatic experiences in Vietnam for about ten months," but concluded that "[o]n the basis of symptoms and manifestations presented in the hospital report it is not shown that the veteran's primary psychiatric disability is posttraumatic stress disorder."

Plaintiff's clinical and military records were subsequently reviewed by a "Board of Three" consisting of two psychiatrists and one psychologist. In their report dated June 2, 1983, the Board concluded that plaintiff showed no evidence of "serious psychopathy," that plaintiff had a "history of drug/alcohol abuse prior to his induction into the military, that the few known details of his combat experience showed "little that is suggestive of post traumatic stress disorder or other sequelae of combat stress," and that plaintiff was able to work for more than three and one-half years as a policeman following his military discharge. Based on the foregoing conclusions, the Board formulated the following diagnosis: (1) substance abuse disorder, i.e., marijuana and alcohol, and (2) dependent personality disorder with borderline traits. The Board further stated that "[w]e do not believe the above diagnosis is related to his military experience since # 1 was already active prior to his joining the Marines and # 2 is more related to his developmental history."

On June 21, 1983, the VA upheld its previous denial of plaintiff's request for service connection for PTSD, and plaintiff subsequently appealed to the Board of Veterans Appeals in July of 1983. Before plaintiff's case was formally submitted to the appeals board, plaintiff received a formal hearing before a Regional Ratings Board, as well as another evaluation by a second Board of Three, composed of two psychiatrists and one psychologist, none of whom served on the previous Board. The second Board evaluation was ordered by the VA when plaintiff complained that substantial inaccuracies existed in his medical history regarding his pre-military life adjustment. The second Board found, in a report dated October 22, 1984, that the prior Board's finding that plaintiff had a pre-military history of alcohol and drug abuse was derived solely from a single incident which the second Board termed a "boyhood prank." The second Board concluded that, based on a finding of nine different "signs and symptoms" exhibited by plaintiff, he was suffering from PTSD. The second Board specifically found no evidence to support a finding that plaintiff had developed a pathological personality disorder prior to his entrance into the military, and the Board concluded that "the veteran is currently suffering from a Posttraumatic Stress Disorder."[7]

Prior to the second Board of Three's review, plaintiff was hospitalized at the VA Medical Center in Topeka, Kansas on May 30, 1984, first in the Chemical Problems Treatment Unit, and later in the General Psychiatry Unit. Upon his discharge from the hospital on January 3, 1985, plaintiff was diagnosed as suffering from "dependent personality with borderline features," PTSD and mixed substance abuse.

In a disability ratings decision dated November 21, 1984, the VA again denied plaintiff's claim for service connection for PTSD, finding that "the evidence does not

---

**6.** The term "service connected" means, with respect to a disability, that "such a disability was incurred or aggravated ... in line of duty in the active military, naval, or air service." 38 U.S.C. § 101(16).

**7.** The Board noted that the cause and origin of PTSD is still a matter of some debate, giving rise to at least three different theories. One theory holds that precombat personality factors play a major role in determining who will develop a traumatic stress disorder. Another theory holds that combat itself causes biochemical, structural or neurological damage that leads to stress disorder. A third theory focuses on the aversive nature of the events, as well as on the fear of bodily injury and death.

provide a reasonable basis upon which to grant compensation benefits without resorting to much speculation as to the causal factors of the veteran's psychiatric problems."

On July 30, 1985, while plaintiff's appeal to the Board of Veterans Appeals was pending, the Board requested the VA's Director of Mental Health and Behavioral Sciences Service to provide advice and a recommendation as to the correct psychiatric diagnosis for plaintiff's case. The Director concluded, after reviewing the record, that the correct diagnosis for plaintiff was PTSD, and that plaintiff's problems with substance abuse were a complication of PTSD.

In a June 3, 1986 decision, the Board of Veterans Appeals examined the record and concluded that, after giving plaintiff the benefit of reasonable doubt on his "unconfirmed" military experiences and varying opinions of experts, the Board was "constrained ... to find that the veteran's experiences during his military service are responsible for his current psychiatric disability. Therefore, service connection is in order."

On the basis of the Board of Veterans Appeals decision allowing service connection for plaintiff's PTSD, the VA issued a new ratings decision on June 23, 1986, which gave plaintiff a temporary 100% disability rating for the period retroactive to September 28, 1982 until April 1, 1983, during most of which time plaintiff was hospitalized in the VA Medical Center. The VA decided that plaintiff's PTSD disability was considered to be "noncompensable disabling" after April 1, 1983. The VA also found that plaintiff's hospitalization from May 1984 through January 3, 1985 was for a personality disorder for which no service connection would be granted. On February 27, 1989, the VA awarded plaintiff a final disability rating of fifty percent for his PTSD, effective July 1, 1988.

On July 10, 1986, plaintiff petitioned the BCNR for the correction of his military records to reflect a medical discharge instead of an honorable discharge, on the grounds that plaintiff was suffering from PTSD at the time of his discharge in 1978. Plaintiff also sought to be placed on the permanent disability retirement list so he could collect retroactive disability pay. In support of his petition, plaintiff relied on his military records and his VA disability rating. The BCNR requested advice on plaintiff's petition from the Naval Medical Command (NAV–MEDCOM). Captain Lapp from NAV–MEDCOM responded by memorandum dated September 26, 1986, in which he stated that plaintiff's military record shows no evidence of a disabling psychiatric condition or a nervous condition indicating PTSD, and that plaintiff was pronounced "free of unfitting conditions" just prior to his 1978 military discharge. The BCNR sent a copy of NAV–MEDCOM's report to plaintiff's attorney, giving him thirty days to respond with further statements or evidence. Plaintiff's attorney responded on October 10, 1986 by sending the BCNR a copy of plaintiff's latest VA award letter as additional evidence.

On October 31, 1986, the BCNR decided that plaintiff had failed to establish a material error or injustice in his records, and thus it denied his application to have his service records corrected. The BCNR stated that it substantially agreed with NAV–MEDCOM's advisory opinion, and the BCNR concluded that plaintiff's disability was incurred after his discharge from the Marines.

On November 26, 1986, plaintiff, represented by his attorney, responded by letter to the BCNR's decision, in which he pointed out that PTSD was not accepted by the American Psychiatric Association until 1980. Therefore, it would have been impossible to diagnose plaintiff as suffering from PTSD at the time of his military discharge in 1978. Plaintiff offered additional evidence in the form of the Board of Veterans Appeals June 3, 1986 decision, in which the Board found that plaintiff's PTSD was incurred as a result of active military service. Plaintiff enclosed documents highlighting problems related to the diagnosis of PTSD, and he asked for a reconsideration of the BCNR's decision. On December 22, 1986, the BCNR denied

plaintiff's request for reconsideration, finding that plaintiff had submitted no new evidence that had not already been considered by the BCNR.

Plaintiff filed his complaint in this court on May 8, 1989, challenging the BCNR's decision as arbitrary, capricious, an abuse of discretion, and otherwise unlawful. Plaintiff seeks to have his military records corrected to reflect a medical discharge instead of an honorable discharge, to be placed on the permanent disability retirement list retroactive to the date of his May 20, 1978 military discharge, and to collect disability retirement benefits retroactive to the date of his discharge. In the alternative, plaintiff asks that his case be remanded to the BCNR for further proceedings.

## DISCUSSION

■ The BCNR's decision in this case must be reviewed in light of the following well-established principles in military disability benefits cases: " 'As a general rule in the disability retirement area, the court is limited to determining whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes or regulations.' " *Dzialo v. United States*, 5 Cl.Ct. 554, 561 (1984) (quoting *Craft v. United States*, 210 Ct.Cl. 170, 179, 544 F.2d 468, 473 (1976)). *See also Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983); *De Cicco v. United States*, 230 Ct.Cl. 224, 228–29, 677 F.2d 66, 70 (1982); *Harris v. United States*, 177 Ct.Cl. 538, 541 (1966). In *Heisig*, the Federal Circuit explained that this standard of review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed is supported by substantial evidence.*" *Heisig, supra*, 719 F.2d at 1157 (emphasis in original). *See also Dzialo, supra*, 5 Cl.Ct. at 561 ("it is not the province of this court to factually determine, *ab initio*, whether plaintiff was unfit for military service at the time of his release").

Furthermore, case law makes it clear that, in order to prevail under the "arbitrary and capricious" standard of review, "plaintiff must demonstrate 'that the personnel involved ignored relevant and competent evidence, that they unreasonably construed the significant body of medical documents before them, or that in [some] other manner they failed to discharge their designated duties.' " *O'Neil v. United States*, 6 Cl.Ct. 317, 319 (1984) (quoting *Stephens v. United States*, 174 Ct.Cl. 365, 373, 358 F.2d 951, 955 (1966)). In other words, "plaintiff must overcome the presumption that 'administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.' " *Chayra v. United States*, 23 Cl. Ct. 172, 178 (Cl.Ct.1991) (quoting *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979)). Furthermore, plaintiff bears the burden of proving by cogent and clearly convincing evidence that the BCNR's decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *See De Cicco, supra*, 230 Ct.Cl. at 233, 677 F.2d at 70; *Chayra, supra*, 23 Cl.Ct. at 177; *Dzialo, supra*, 5 Cl.Ct. at 565; *Gerber v. United States*, 2 Cl.Ct. 311, 319 (1983); *Parthemore v. United States*, 1 Cl.Ct. 199, 202 (1982). For the following reasons, the court finds that plaintiff has not shown by cogent and clearly convincing evidence that the BCNR's decision to deny plaintiff's request for correction of military records was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes or regulations.

### I. The Parties' Positions

Defendant seeks to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to RUSCC 12(b)(4), or alternatively for summary judgment, pursuant to RUSCC 56(c). RUSCC 12(b)(4) states that when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." RUSCC 56(c) allows the court to grant summary judgment when the moving party can establish that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Plaintiff opposes defendant's disposi-

tive motions, and has cross-moved for summary judgment. In view of the absence of any genuine issues of material fact, the court finds the present dispute is amenable to resolution by summary judgment.[8]

As an initial matter, defendant correctly points out that the court's standard of review in military disability retirement cases, such as this one, is limited to a determination as to whether the BCNR's decision to deny plaintiff's petition to have his military records corrected was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence. *See De Cicco, supra,* 230 Ct.Cl. at 228–29, 677 F.2d at 70; *Craft, supra,* 210 Ct.Cl. at 179, 544 F.2d at 473; *Dzialo, supra,* 5 Cl.Ct. at 561. *See also Heisig, supra,* 719 F.2d at 1156 (the court's standard of review is limited because the determination regarding physical fitness for military service is vested in the military departments). Moreover, defendant argues that plaintiff has not met his burden of proving by cogent and clearly convincing evidence that the BCNR's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulation. *Parthemore, supra,* 1 Cl. Ct. at 202.

Defendant attacks plaintiff's reliance on his VA disability compensation rating to challenge the BCNR's decision by pointing out that VA ratings are not determinative on the issue of a service member's fitness for full duty at the time of his discharge, citing *De Cicco, supra,* 230 Ct.Cl. at 231, 677 F.2d at 71; *Williams v. United States,* 186 Ct.Cl. 611, 613–14, 405 F.2d 890, 891–92, *cert. denied,* 396 U.S. 966, 90 S.Ct. 447, 24 L.Ed.2d 432 (1969); and *Dzialo, supra,* 5 Cl.Ct. at 565. Defendant argues that plaintiff's 100% temporary VA disability rating for PTSD covered only a six-month period from September 1982 until April 1983, over four years after plaintiff's 1978 military discharge, and points out that the

VA rating was not made retroactive to the date of plaintiff's military discharge. In addition, defendant argues that plaintiff's medical records and various diagnoses of his psychiatric condition fail to support his claim that he was suffering from PTSD at the time of his discharge in 1978. None of the diagnostic reports reflect any conclusions about plaintiff's fitness for military duty at the time of his 1978 discharge, argues defendant, and the earliest diagnosis of PTSD was made in 1982, over four years after his discharge.

Defendant concludes that plaintiff's military records support a finding that plaintiff was fit for duty at the time of his discharge, citing in particular the 1978 pre-discharge medical examination. Defendant points out that, although plaintiff now attacks that examination as "cursory," he failed to challenge it before the BCNR, and he provides no proof in support of his contention that the examination was in any way defective.

Plaintiff opposes defendant's dispositive motions on the grounds that there are material factual issues in dispute, and plaintiff cross moves for summary judgment on the grounds that the BCNR's decision is arbitrary, capricious, and unsupported by substantial evidence. However, the only "material factual issues" alleged involve whether the BCNR's decision is supported by substantial evidence. The court considers these allegations more properly characterized as legal issues rather than factual issues, and therefore summary judgment is appropriate. Plaintiff's challenge to the BCNR's decision as arbitrary, capricious, and unsupported by substantial evidence is based on three arguments. Plaintiff's first argument is that plaintiff's 1978 pre-discharge medical examination was defective. Plaintiff's second argument is that the BCNR failed to consider post-discharge

---

**8.** In support of its motion to dismiss, defendant argues that plaintiff cannot meet the threshold requirement for entitlement to disability benefits, *i.e.,* unfitness to perform the duties of his office, grade, rank or rating due to physical disability incurred *while entitled to basic pay.* *See* 10 U.S.C. § 1201, *supra* note 2. However, this argument goes to the merits of plaintiff's

claim, as plaintiff is entitled, under section 1201, to disability pay for a qualifying disability unless it is lawfully withheld. *Sawyer v. United States,* 930 F.2d 1577, 1581 (Fed.Cir.1991). Accordingly, the court will proceed to consider the merits of plaintiff's claim in the procedural posture of defendant's motion for summary judgment.

medical diagnoses. Plaintiff's third argument is that the BCNR failed to give proper consideration to plaintiff's temporary 100% VA disability rating.

Plaintiff recognizes his burden to show by cogent and clearly convincing evidence that the decision of the BCNR denying him disability retirement benefits was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence. *See De Cicco, supra,* 230 Ct.Cl. 224, 677 F.2d 66 (1982); *Chayra, supra,* 23 Cl.Ct. at 177; *Jones v. United States,* 7 Cl.Ct. 673 (1985); *Terrell v. United States,* 7 Cl.Ct. 171 (1984), *aff'd,* 785 F.2d 323 (Fed.Cir.1985), *cert. denied,* 479 U.S. 834, 107 S.Ct. 129, 93 L.Ed.2d 73 (1986). Plaintiff attacks the BCNR's decision as a "narrow, selective, unlawful" reading of the entire record which ignores and misconstrues substantial and objective evidence that plaintiff was unfit for duty upon his military discharge in 1978. In particular, plaintiff cites the "barren and uninformative" pre-discharge medical examination report, and the "inappropriate" reports of the first Board of Three and the Director of NAV–MEDCOM, both of which plaintiff characterizes as "inaccurate, flawed, cursory, internally contradictory, and incompatible with general medical practice, procedure and protocol."

## II. The Merits

■ In plaintiff's first argument, he attacks at length his pre-discharge medical examination by a military doctor in May of 1978, less than two weeks before his discharge. However, the military physician who performed the examination found plaintiff to be "fit for duty" and thus eligible for discharge. Plaintiff also signed a statement at that time agreeing to inform the examining physician of any serious defect or condition that he felt would interfere with the performance of his military duties. However, in the statement plaintiff revealed no defects or conditions other than bad back trouble. Plaintiff now alleges that the military examination was "brief, routine, predominantly physical, cursory in form, and totally incapable of

detecting the presence of, or the severity of the PTSD from which he was suffering." Plaintiff complains that he was not given a formal mental status examination prior to discharge, which he alleges would have disclosed his illness and his unfitness for duty. Plaintiff explains his failure to inform the examining physician of any medical condition bearing on his fitness for duty by pointing out that PTSD was not medically recognized and therefore could not be diagnosed at the time of his discharge. However, it is undisputed that PTSD became a medically recognized diagnosis in 1980, two years before plaintiff was diagnosed in 1982. According to plaintiff, denial of PTSD, and suppression of its symptoms, are common manifestations of PTSD. Plaintiff explains that he began to seek administrative relief for PTSD within two months of his PTSD diagnosis in August of 1982, and he should not be penalized for delay in seeking to correct his military records.

Plaintiff's challenge to the BCNR's decision on the ground that his 1978 pre-discharge medical examination was defective is without merit. In *De Cicco, supra,* a former Air Force colonel challenged as "cursory" a military medical examination finding him to be fit for duty. The Court of Claims found that, without more, a bold assertion that a medical examination was "cursory" does not overcome the presumption that the examining doctor faithfully performed his duty. *De Cicco, supra,* 230 Ct.Cl. at 232, 677 F.2d at 72. *See also Unterberg v. United States,* 188 Ct.Cl. 994, 1002, 412 F.2d 1341, 1346 (1969) (there is a presumption that medical officers faithfully perform their duties); *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (plaintiff must rebut presumption that military administrators discharge their duties correctly, lawfully, and in good faith). Plaintiff has presented no evidence to rebut the presumption that plaintiff's pre-discharge medical examination in 1978 was performed faithfully and correctly by the examining physician. Even if plaintiff contends that a more thorough examination would have revealed that plaintiff was showing signs or symptoms of PTSD at

discharge, that alone is not enough to warrant a finding that plaintiff had a disability rendering him unfit for duty at the time of discharge. *See* 10 U.S.C. § 1201, *supra* note 2; *Walters v. United States*, 175 Ct. Cl. 215, 224, 358 F.2d 957, 962 (1966) ("it is not enough to show that plaintiff's service-connected injuries resulted in an eventually disabling condition or that at the time of release plaintiff's condition was in an incipient stage of pathological development").

Furthermore, plaintiff was apparently able to engage in continuous, gainful employment as a law enforcement officer in several locations between 1978, when he was discharged from the military, and 1982, when he was hospitalized after a motorcycle accident and was first diagnosed with PTSD. Plaintiff's employment history, although unstable, nonetheless suggests rather persuasively that plaintiff was fit for military duty in 1978.

Plaintiff's second argument is that the BCNR failed to consider post-discharge medical evaluations that allegedly reveal plaintiff's unfitness for duty at the time of his 1978 discharge. The court disagrees with this argument for two reasons. First, the administrative record does not support plaintiff's contention that the BCNR's decision was based solely on the 1978 pre-discharge medical report. On the contrary, the record reveals that plaintiff submitted, and the BCNR considered, his post-discharge medical records. In the absence of evidence to the contrary, the court presumes that the BCNR performed its duties faithfully, correctly and lawfully by giving due consideration to all the evidence submitted by plaintiff in support of his petition. *See, e.g., Bockoven v. Marsh*, 727 F.2d 1558, 1563 (Fed.Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Sanders, supra*, 219 Ct.Cl. at 302, 594 F.2d at 813; *Smith v. United States*, 19 Cl.Ct. 19, 26 (1989), *aff'd*, 914 F.2d 271 (Fed.Cir.1990).

Second, it is far from clear that plaintiff's post-discharge medical records reveal that plaintiff was suffering from PTSD in 1978. The record reveals that those post-discharge medical records contain conflicts of medical opinion regarding the state of plaintiff's mental health after 1978. Even those records, opinions and diagnoses upon which plaintiff specifically relies to support his position do not clearly indicate that plaintiff was suffering from PTSD at the time of his discharge in 1978. The evidence upon which plaintiff relies includes the second Board of Three review, the Board of Veterans Appeals decision in 1986, and the reports of Dr. Horne, a psychiatrist, and Dr. Patterson, a psychotherapist. These documents indicate that plaintiff is currently suffering from PTSD, and that his present condition stems from his military experiences in the Marines. The record contains other medical reports indicating that plaintiff is not suffering from PTSD, however, but rather from personality disorders and substance abuse. Moreover, there are no military or medical records dated earlier than 1982 that indicate that plaintiff was suffering from PTSD and was "unfit for duty" at the time of his military discharge in 1978.

The court's limited standard of review must be kept in mind when considering this conflicting evidence. The field of medical diagnosis is perhaps a paradigm example of an area in which reasonable minds can differ. As the Federal Circuit noted in *Heisig, supra*, the "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province ... and ... courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig, supra*, 719 F.2d at 1156.

In the case at bar, the court will not substitute its judgment for that of the BCNR where there is conflicting evidence surrounding an issue. The record clearly shows that the BCNR gave plaintiff every opportunity to present his case, and the VA obligingly ordered the second Board of Three review when plaintiff complained of inaccuracies in the first Board of Three's report. Furthermore, in finding the service connection which led to the VA's 1986 ratings decision giving plaintiff a 100% temporary disability rating for PTSD, the Board of Veterans Appeals 1986 decision gave

plaintiff the benefit of reasonable doubt in finding that plaintiff's military service experiences are responsible for his "current psychiatric disability." [9] Even giving plaintiff the benefit of reasonable doubt, the VA found service connection only for plaintiff's current PTSD. The VA did not determine that plaintiff's PTSD existed at the time of his 1978 discharge. Indeed, the fact that plaintiff has never received a VA disability rating for any time period before 1982 indicates that plaintiff was not disabled by PTSD at the time of his discharge in 1978.

Plaintiff complains that the BCNR's decision was based solely on the pre-discharge examining physician's evaluation in 1978, which, plaintiff reiterates, was seriously flawed. Plaintiff relies on several Court of Claims decisions to support his position that subsequent medical history must be considered if it shows that plaintiff's disability while in the service was substantially more serious than suspected, and that previous diagnoses were inadequate or incorrect. *Merson v. United States*, 185 Ct. Cl. 48, 59, 401 F.2d 184, 188 (1968); *Hoppock v. United States*, 176 Ct.Cl. 1147, 1163 (1966); *Walters, supra*, 175 Ct.Cl. at 225, 358 F.2d at 962. In each of these cases cited by plaintiff, the servicemember's disability was reflected in the military medical records before discharge, unlike the present case. Moreover, the court does not find helpful plaintiff's attempt to analo-

gize these cases, and his situation, to Social Security disability cases such as *Taylor v. Harris*, 505 F.Supp. 153 (E.D.Tex.1981); *Cassel v. Harris*, 493 F.Supp. 1055 (D.Colo. 1980); *Stewart v. Cohen*, 309 F.Supp. 949 (E.D.N.Y.1970).[10] Unlike these Social Security disability cases, plaintiff here made no financial contribution to the fund from which military disability benefits are paid. In addition, unlike the Social Security disability cases he cites, plaintiff has a remedy in the VA benefits program for any service-connected disability arising after discharge, from which he receives benefits.[11]

Plaintiff cites several examples of medical statements and diagnoses from various treating physicians, including mental health experts, dating back to 1982, that indicate plaintiff was suffering from PTSD at the time of the statement or diagnosis. As plaintiff points out, there appear to be no disagreements among the various treating physicians that plaintiff is, and has been, suffering from PTSD since 1982. However consistent these diagnoses, they do not show that plaintiff suffered from PTSD at the time of his 1978 discharge. Moreover, the absence of any medical records between the time of plaintiff's 1978 military discharge and 1982, when he was first diagnosed with PTSD, strongly suggests that plaintiff was not suffering from

---

**9.** The Code of Federal Regulations governing the Department of Veterans Affairs, 38 C.F.R. § 3.102, explains the "reasonable doubt" standard:

It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration, of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim.

**10.** For example, in *Cassel v. Harris*, the court found that a Social Security claimant would be eligible for benefits for a latent condition that became disabling after her entitlement to benefits had expired, if the latent disability was di-

rectly traceable to a condition that arose while she was eligible for benefits. The court's holding was based on distinguishing factors not present in the case at bar, such as the contributory nature of the Social Security system, and the absence of any other remedy. *Cassel v. Harris*, 493 F.Supp. 1055, 1058 (D.Colo.1980).

**11.** Neither does the court find useful plaintiff's attempt to draw an analogy from wrongful discharge military pay cases, such as *Dilley v. Alexander*, 627 F.2d 407 (D.C.Cir.1980). Plaintiff's argument that he has suffered a "wrongful discharge" because he received an honorable discharge instead of a medical discharge simply has no merit, since, unlike wrongful discharge cases, plaintiff here is not arguing that the fact of the military discharge itself is the source of his injury, but rather that the source of his injury stems from the characterization of his discharge as "honorable" rather than "medical."

PTSD in 1978.[12]

Plaintiff's third argument is that the BCNR failed to give enough weight to the VA's June 1986 decision to award him a 100% temporary disability rating for PTSD, retroactive to a six-month period from September 1982 until April 1983. Plaintiff concedes that VA ratings decisions are based on different criteria than fitness for duty evaluations, but he argues that the VA ratings constitute an objective determination by a neutral third party that plaintiff is disabled, and that the disability is service-connected. Plaintiff cites several Court of Claims decisions to support his argument that VA ratings decisions are entitled to some weight in determining eligibility for disability retirement pay. *Beckham v. United States*, 183 Ct.Cl. 628, 392 F.2d 619 (1968); *Dayley v. United States*, 180 Ct.Cl. 1136 (1967); *Cooper v. United States*, 178 Ct.Cl. 277 (1967); *Smith v. United States*, 168 Ct.Cl. 545 (1964). The court does not disagree with these cases. However, as plaintiff recognizes, the VA disability rating is only an assessment of the degree of plaintiff's disability at the time of the assessment. The VA assessed plaintiff's disability in 1986, and determined he was temporarily disabled for six months between late 1982 and early 1983. The VA rating is irrelevant to the question of plaintiff's fitness for duty at the time of his discharge in 1978. Indeed, the fact that the VA retroactively applied plaintiff's 100% temporary disability rating only to 1982, and not 1978, gives some indication that plaintiff was not suffering from PTSD at the time of his discharge.

Accordingly, the court agrees with the BCNR in declining to accord VA disability ratings the weight plaintiff believes they are due. Moreover, the trend more recently is to accord little or no weight to VA disability ratings in determining eligibility for disability retirement pay. Thus, the court chooses to align itself with the weight of recent authority in espousing this position, articulated emphatically by the Claims Court in *Dzialo*, a factually similar case: "The fact that plaintiff received a 50% disability rating from the VA, higher than the 30% minimum rating required by 10 U.S.C. § 1201, is in no way determinative on the issue of plaintiff's eligibility for disability retirement pay. A long line of decisions have so held in similar circumstances." *Dzialo, supra*, 5 Cl. Ct. at 565 (citing *De Cicco, supra*, 230 Ct.Cl. at 231, 677 F.2d at 71 (60% VA rating); *Finn v. United States*, 212 Ct.Cl. 353, 356, 548 F.2d 340 (1977) (60% VA rating); *Bennett v. United States*, 200 Ct. Cl. 635, 643 (1973) (50% VA rating); *Lord v. United States*, 2 Cl.Ct. 749, 754 (1983) (70% VA rating)).[13]

CONCLUSION

For the foregoing reasons, the court, on the basis of the administrative record and the submissions of the parties—oral argument being deemed unnecessary and was not requested, upholds the BCNR's decision to deny plaintiff's petition to correct his military records to reflect a medical

---

12. Plaintiff attacks the first Board of Three's conclusion in 1983 that he suffered from dependent personality disorder and substance abuse, as well as NAV–MEDCOM's alleged failure to consider post-discharge medical records in 1986. Regardless of whether these actions are correct or not, however, it is still plaintiff's burden to show that he was suffering from PTSD at the time of his military discharge in 1978.

13. It is important to emphasize the fact that at the time of plaintiff's discharge in 1978, there was no medical documentation of any symptoms of PTSD. *See Dzialo v. United States*, 230 Ct.Cl. 506, 511, 677 F.2d 873, 875 (1982). While PTSD was not given a diagnostic name until 1980 by the psychiatric community, its symp-

toms, if present in 1978, would have been overt and noticeable had they been so inhibiting as to affect his fitness for duty. See in this regard *Real v. United States*, 906 F.2d 1557, 1559, n. 2 (Fed.Cir.1990) (veteran who sought disability retirement pay for PTSD experienced psychotic episode prior to discharge); *Harper v. United States*, 159 Ct.Cl. 135, 310 F.2d 405 (1962) (back problems known at time of discharge); *Proper v. United States*, 139 Ct.Cl. 511, 154 F.Supp. 317 (1957) (at time of discharge plaintiff suffered from uncontrollable tremors of the head and hands, double vision and difficulty in using hands to write); *Dzialo, supra*, 230 Ct.Cl. at 511, 677 F.2d at 875 (medical record allegedly replete with references to plaintiff's physical problems at time of discharge).

discharge rather than an honorable discharge, and to be placed on the permanent disability retirement list.[14] Plaintiff has failed to show by cogent and clearly convincing evidence that the decision of the BCNR was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes or regulations. *See De Cicco, supra,* 230 Ct.Cl. at 233, 677 F.2d at 70; *Chayra, supra,* 23 Cl.Ct. at 177. Therefore, the court grants defendant's motion for summary judgment, pursuant to RUSCC 56(c). Plaintiff's motion for summary judgment is denied. The Clerk is directed to enter judgment dismissing plaintiff's complaint. No costs.

---

**14.** The case at bar was suspended by agreement of the parties pending the outcome of *Real v. United States,* 906 F.2d 1557 (Fed.Cir.1990), which the Federal Circuit decided on June 21, 1990. In *Real,* the Federal Circuit reaffirmed the long-established rule that

claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it.... However, "where the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant's eligibility for disability retirement, the single cause of action accrues upon the Correction Board's final decision."

*Real,* 906 F.2d at 1560 (quoting *Friedman v. United States,* 159 Ct.Cl. 1, 25, 310 F.2d 381, 396 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963)). In *Real,* the Federal Circuit examined the question of whether a veteran's knowledge of the existence and extent of his condition at the time of discharge was sufficient to justify the conclusion that he waived his right to a board review of the military's finding of fitness by failing to demand a board review at the time of his discharge. The court remanded the case to the Claims Court, holding that the issue must be determined by reference to the statutory requirements for entitlement to disability retirement benefits that were allegedly barred by the statute of limitations. *Real, supra,* 906 F.2d at 1562–63.

After *Real* was decided, defendant in the present case raised for the first time a statute of limitations defense, and has moved to dismiss on that basis in a supplemental motion. In its accompanying brief, defendant argues that Kirwin's claim accrued at the time of his discharge in 1978, or at least no later than the time of his PTSD diagnosis in 1982. Thus, defendant contends that Kirwin's claim is barred by the court's six-year statute of limitations, 28 U.S.C. § 2501, because he did not file suit in this court until 1989. Defendant disagrees with *Real* to the extent that *Real* indicates that a claim for disability retirement pay does not accrue until the correction board, as the first reviewing board, acts on the veteran's claim. While defendant disagrees with *Real* in this regard, it recognizes that this court must follow *Real* where applicable which is the case here. However, the court feels the statute of limitations issue in *Real* is not present in the case at bar, for two reasons. In 1986, the BCNR, as the first reviewing board, denied Kirwin's claim for disability retirement pay. Under *Real,* Kirwin's claim accrued in 1986, and since he filed suit in this court in 1989, his claim is not barred by the statute of limitations. It is also worth noting that a critical factor in *Real* is missing in the present case. In *Real,* the veteran suffered at least one psychotic episode while in military service, a symptom indicative of PTSD. *Real, supra,* 906 F.2d at 1559 n. 2. Here, the record is barren of objective evidence that plaintiff suffered from PTSD before his discharge. Accordingly, the statute of limitations issue in *Real* is not present in the case at bar.

In addition, defendant's supplemental motion and brief urge the court to dismiss plaintiff's complaint for lack of jurisdiction to entertain a military disability retirement claim. However, the Federal Circuit has recently reaffirmed this court's jurisdiction in the disability retirement area. *Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir.1991); *see also Yount v. United States,* 23 Cl.Ct. 372 (1991); *Chayra v. United States,* 23 Cl.Ct. 172 (1991). Again, defendant voices its disagreement with the *Sawyer* holding, but acknowledges that such a holding is binding on, and must be followed by this court.