**James E. POOLE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 02–454C, 04–460C.

United States Court of Federal Claims.

March 23, 2005.

James E. Poole, Rockbridge Baths, VA, pro se for plaintiff.

Michael D. Austin, U.S. Department of Justice, Washington, DC, with whom was Peter D. Keisler, Assistant Attorney General, for defendant.

## ORDER ON MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [1]

FIRESTONE, Judge.

Currently pending before the court is the United States' ("government's") August 3,

1. This case is presently before the court following a remand from the United States Court of Appeals for the Federal Circuit. On March 18, 2003, this court entered judgment in favor of the United States upon the government's motion to dismiss for lack of subject matter jurisdiction. On May 25, 2004, the Federal Circuit, finding that there was subject matter jurisdiction, reversed and remanded the case back to this court for a decision on the merits. While the case was pending on appeal, the plaintiff, Mr. Poole, filed a new complaint on March 18, 2004, No. 04–

2004 Motion to Dismiss, or in the Alternative, for Judgment upon the Administrative Record. This action was filed by *pro se* plaintiff James E. Poole. Mr. Poole, who was retired from the Virginia Army National Guard of the United States ("VA–ARNGUS") on a 30% mental disability in 1998, challenges his disability rating and the lawfulness of his discharge. The government, in its motions, contends that Mr. Poole has waived his right to challenge his disability rating. In the alternative, the government contends that Mr. Poole is not entitled to an increase in his disability rating from the military. In addition, the government contends that Mr. Poole's claim for improper discharge must be rejected on the ground that it does not state a money-mandating claim.

For the reasons that follow, the court **GRANTS–IN–PART** and **DENIES–IN–PART** the government's August 3, 2004 motion to dismiss. In addition, the court hereby **GRANTS–IN–PART** and **DENIES–IN–PART** the government's August 3, 2004 motion for judgment upon the administrative record and **GRANTS–IN–PART** and **DE-NIES–IN–PART** the plaintiff's August 12, 2004 cross-motion for judgment upon the administrative record.

## FACTS

### A. Background Facts

The facts as set forth in the Administrative Record are as follows: Mr. Poole entered the United States Army as an enlisted soldier on April 8, 1968. He later enlisted in the VA–ARNGUS and was commissioned as a second lieutenant, effective September 25, 1978. From June 5, 1991 until he was honorably separated from active service in 1996, Mr. Poole served on an Active Guard and Reserve Program tour pursuant to 10 U.S.C. § 12301(d) (2005).

Mr. Poole was promoted to first lieutenant on September 24, 1981 and then to captain on September 23, 1985. On October 25, 2002, the U.S. Army Physical Disability Agency issued an order retroactively promoting Mr. Poole to the rank of major, effective November 1, 1996.

On March 27, 1995, Mr. Poole's battalion commander referred him to the Community Mental Health Activity for a mental status evaluation based on the commander's observations of abnormal behavior. On January 12, 1996, Mr. Poole was hospitalized for seven days after he became incoherent and disoriented while performing staff duties during a state emergency snow duty operation. He was diagnosed as suffering from a delusional disorder.

In April 1996, a Medical Evaluation Board ("MEB") convened to determine whether Mr. Poole should be referred to a Physical Evaluation Board ("PEB"). The MEB found that Mr. Poole was suffering from a

> delusional disorder, persecutory type, manifested by exaggerated concerns that co-workers have bugged his home, office, and car; paranoid personality traits manifested by preoccupation with unjustified doubts about loyalty of friends or associates, reluctance to confide in others because of an unwarranted fear that information will be used maliciously; ... and social environment and occupational problems.

Administrative Record ("AR") at 130.

The MEB found that Mr. Poole's case should be referred to a PEB, and Mr. Poole concurred in that recommendation.

An informal PEB was then convened on August 21, 1996 to determine Mr. Poole's fitness for retention on active duty. The PEB found that Mr. Poole's condition made him unfit for retention but also found that, based on the medical evidence of record, his medical condition had not sufficiently stabilized to render a permanent rating. The PEB assigned a 30% disability rating and recommended that Mr. Poole be placed on the Temporary Disability Retired List ("TDRL") until reevaluation in 1998. AR at 38. The PEB stated that, although Mr. Poole was given a 30% disability rating, he would "actually be in receipt of 50% of [his] retired base pay per month until removed from [his] temporarily retired status." AR at 38. On August 27, 1996, Mr. Poole concurred in the recommendation and "waived

460C, asserting new causes of action. These

cases were consolidated on August 9, 2004.

his right to a formal hearing of his case." AR at 130. He was then temporarily retired by reason of physical disability with an assigned 30% disability rating.

On September 14, 1998, as a follow-up to the Temporary Disability finding, a PEB convened to reevaluate Mr. Poole's case and to determine whether a permanent disability rating was appropriate. The PEB concluded that Mr. Poole should be given a permanent disability retirement. The PEB's disability description states that Mr. Poole suffers from a "[d]elusional disorder, persecutory type by history, manifested by a history of exaggerated concerns that co-workers had bugged his home, his office and his car. Impairment for social and industrial adaptability is considerable. Soldier requires medication and psychotherapy and at this point is stable." AR at 6. The PEB disability retirement recommendation goes on to provide that "[t]he present PEB rating of 30% accurately reflects the current degree of severity of [the plaintiff's] condition. The PEB considers [the plaintiff] to have stabilized sufficiently for rating purposes and recommends permanent retirement." AR at 6. The PEB stated in conclusion that "[t]he Board finds the member is physically unfit and recommends a combined rating of: 30% and that the member's disposition be: Permanent disability retirement." AR at 6. In a letter to the plaintiff explaining the PEB decision, the PEB recorder stated that these conclusions were based upon the plaintiff's "recent periodic medical examination and other available medical records." AR at 8. In particular, these records include the June 1998 Report of Ronald O. Forbes, M.D. entitled "Narrative Summary for TDRL Re–Evaluation." AR at 13–15. That report includes the same diagnosis that appeared in the PEB's Recommendation dated September 14, 1998. Dr. Forbes further indicated in his report that, "[Mr. Poole] continues to be at risk of relapse.... He will continue to need outpatient mental health treatment." AR at 15.

Mr. Poole was given this information in DA Form 199, along with a two-page letter explaining his options and rights. Mr. Poole concurred in the PEB's recommendation and signed the required form on September 23, 1998. Mr. Poole was placed on the Permanent Disability Retirement List ("PDRL") on October 6, 1998. On June 7, 2001, Mr. Poole filed an application with the Army Board for the Correction of Military Records ("ABCMR") challenging the MEB/PEB process and seeking reinstatement in the VA–ARNGUS effective November 1, 1996. He requested a new MEB/PEB with an award of a 50% disability, or alternatively, an award of back pay and allowances dating from November 1, 1996 to the present time. Mr. Poole challenged the procedures the military used in obtaining his disability rating. He also challenged the level of his disability rating. Mr. Poole argued that, because the impairment of his "social and industrial adaptability was considerable," he was entitled to a 50% disability rating based on the applicable disability rating standards. AR at 138. He also submitted a sworn statement identifying his hospitalization in 1996 and his visits to emergency rooms for panic attacks. AR at 155–59. The ABCMR found that Mr. Poole had failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice and, therefore, denied his application on March 14, 2002. AR at 129–33.

Mr. Poole also filed applications with the ABCMR in 2003 and 2004 challenging the Army's failure to change his disability rating based on his mental health. He also wanted the ABCMR to consider whether he was disabled with diabetes before he was retired on a mental disability in 1998. More specifically, Mr. Poole charged that his medical records indicated at the time of his discharge that he was suffering from diabetes and that the PEB erred in failing to recognize the presence of the disease. Mr. Poole contended that, had the PEB performed its job, it would have found that he was a diabetic and that he was entitled to additional disability pay. In support of his requests, Mr. Poole attached to the ABCMR application the report of a Licensed Clinical Psychologist, James W. Worth, Ed.D. Dr. Worth indicated that Mr. Poole was hospitalized in 2001 for mental health reasons. Psychological Report of Worth at 4. Mr. Poole was apparently hospitalized after he became delusional and claimed that his home phone was tapped.

He also was apparently suffering from hallucinations at that time. The report further noted that Mr. Poole suffers from noninsulin-dependent diabetes mellitus. Psychological Report of Worth at 3. Based on his evaluation of Mr. Poole, Dr. Worth indicated that Mr. Poole meets the criteria for a 50% disability rating. Psychological Report of Worth at 6.

On January 12, 2005, the ABCMR denied Mr. Poole's request to increase his disability rating to reflect the inclusion of his diabetes. The ABCMR determined that Mr. Poole's claim regarding his diabetes was not timely in that it was not filed within three years of his discharge, or by October 6, 2001. In addition, the Board determined that Mr. Poole had not submitted sufficient evidence to establish either that he had diabetes before he retired from the military or, if he had diabetes, that it was sufficiently serious as to have warranted a disability discharge.

## B. Litigation History

As noted above, this case is now pending before the court following a remand from the Federal Circuit. On March 18, 2003 this court had dismissed Mr. Poole's complaint in case number 02–454C on the ground that Mr. Poole had voluntarily concurred in his discharge from the VA–ARNGUS and therefore this court had no basis for review. The Federal Circuit reversed this court's dismissal of Mr. Poole's complaint, holding that Mr. Poole's voluntary separation based on a disability did not deprive the court of jurisdiction. Thus, the court now has before it Mr. Poole's challenge to the ABCMR decisions regarding his mental disability rating from the initial 02–454C case. In addition, the court has before it the challenges raised in case number 04–460C. In his second complaint, Mr. Poole alleges that he did not voluntarily accept his mental disability rating because he was mentally impaired at the time he agreed not to contest his retirement. He also seeks additional disability benefits for the diabetes he allegedly developed while still in the military. Alleging violations of his procedural rights, he further seeks a service credit from the time of his retirement for his mental disability until the present time. The two cases were consolidated in August 2004.

The government has moved to dismiss the consolidated cases under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), or in the alternative, has moved for judgment on the administrative record under RCFC 56.1. The government contends that Mr. Poole has failed to state a claim with regard to his disability rating because he "waived" all objections to his disability retirement when he concurred in the PEB's findings regarding his mental disability in 1998. The government also contends that Mr. Poole's improper discharge claim must be dismissed because, as a member of the National Guard, he cannot seek pay for periods beyond his separation date. For this reason the government claims that Mr. Poole has failed to state a money-mandating claim based on improper discharge.

In its request for judgment on the administrative record, the government argues that the ABCMR's decisions not to revisit Mr. Poole's 30% mental disability rating or to increase his rating to account for his alleged diabetes are supported by the record and are not arbitrary and capricious.

Mr. Poole, in response, argues that he did not waive his objections to his disability rating when he concurred in the PEB's recommendation. He contends that he was not mentally competent to concur in his disability rating. He also contends that the decisions of the ABCMR with respect to his initial disability rating and with regard to his diabetes are not supported by the record and are arbitrary and capricious. He therefore contends that the ABCMR decisions must be reversed. Finally, he contends that case law supports his view that this court may review and grant his request for back pay based on his claim of improper discharge.

## DISCUSSION

### A. Standard of Review

RCFC 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. This court will dismiss a complaint for failure to state a claim upon which relief can be granted only if

it appears beyond a doubt that the plaintiff can prove no set of facts entitling him relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "[I]n passing on a motion to dismiss ... for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Id.* at 236, 94 S.Ct. 1683. In addition, the court must presume that the undisputed factual allegations included in the complaint are true. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Finally, where, as here, the plaintiff in the case is proceeding *pro se,* the pleadings will be held to a "less stringent standard[ ] than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotations omitted).

The standards to be applied under RCFC 56.1 are equally well-settled. "As a general rule in the disability area, the court is limited to determining whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes or regulations." *Dzialo v. United States,* 5 Cl.Ct. 554, 561 (1984) (citing *Craft v. United States,* 210 Ct.Cl. 170, 544 F.2d 468 (1976)). *See also Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983). In *Heisig,* the Federal Circuit explained that this standard of review, "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Id.* at 1157. Importantly, the court does not sit as a "super correction board." *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979). In order to prevail, the plaintiff must establish "by cogent and clearly convincing evidence that the [military's] decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes or regulations." *Kirwin v. United States,* 23 Cl.Ct. 497, 502 (1991) (citing *de Cicco v. United States,* 230 Ct.Cl. 224, 677 F.2d 66, 70 (1982)). *See also Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986).

**B. Motion to Dismiss**

The government argues that Mr. Poole waived any objection to his disability rating when he failed to contest the findings and recommendation of the PEB in 1998. Relying on *Maier v. Orr,* 754 F.2d 973 (Fed.Cir. 1985), *cited with approval in McHenry v. United States,* 367 F.3d 1370, 1377 n. 6 (Fed. Cir.2004), the government contends that, if a party has chosen not to challenge his or her discharge at the time it was issued, then any objections to the discharge should be considered waived and any subsequent request for judicial review should be dismissed.

Mr. Poole argues in response that he was mentally disabled at the time of his discharge and therefore failed to fully appreciate or understand the import of failing to object to his disability rating. He argues that he did not intend to waive his objections to his rating.

The court finds that where, as here, a serviceperson suffers from a mental disability rating and contends that he failed to fully appreciate the import of his actions due to his mental disability, he should not be deemed to have "waived" his objections to his rating because he waived his right to an administrative hearing. It is recognized that a serviceperson can overcome the presumption that a retirement is voluntary where he establishes that he failed to understand the import of his actions due to his mental condition. *See Manzi v. United States,* 198 Ct.Cl. 489, 492, 1972 WL 20799 (1972); *see generally Gallucci v. United States,* 41 Fed Cl. 631, 638 (1998). The same rule should apply here. While there should be a presumption that a person who chooses not to pursue an administrative objection has waived any objection, that presumption can be overcome with evidence that the person failed to fully appreciate the situation due to a mental condition. Accordingly, the government's motion to dismiss Mr. Poole's complaint on the basis of "waiver" is denied.

The government also seeks to dismiss Mr. Poole's claim for improper discharge from the Army. Mr. Poole claims that, because he was involuntarily retired and assigned an incorrect disability rating, he is entitled to receive constructive service from 1998 until the present time. Mr. Poole does not claim, on the other hand, that he wants to be reinstated in the service. He admits that

he was correctly retired from service as unfit. However, while, as discussed below, Mr. Poole did receive an incorrect disability rating, the remedy for such a violation is not a credit for constructive service. In the present case, Mr. Poole is entitled to a review of his disability rating. However, having admitted that he was unfit for service, he cannot complain that he should receive constructive credit for the period between the time he was placed on disability and the present. Constructive service, if it is available at all, is predicated on the serviceperson being otherwise fit to serve. *See* 10 U.S.C. § 1405 (2005). As such, Mr. Poole's reliance on the constructive service cases, including *Pohanic v. United States,* 48 Fed.Cl. 166 (2000), is misplaced. Mr. Poole's claim for improper discharge, and the related charge that his discharge deprived him of his due process rights, are therefore dismissed in light of his admission that he was properly retired because of his disability. The court will next consider Mr. Poole's objections to the ABCMR's failure to correct his disability rating.

## C. Review on the Administrative Record

### 1. The Plaintiff's 30% Mental Disability Rating is Not Supported by the Record

█ Mr. Poole claims that the 30% mental disability rating that he received is not supported by the record because, under the criteria set forth in Army Regulation 653–40, entitled *Personnel Separations—Physical Evaluation for Retention, Retirement, or Separation,* he should have received a 50% disability. Army Regulation 635–40, Appendix B establishes the Army's Application of the Department of Veterans Affairs Schedule for Rating Disabilities ("VASRD"). Appendix B–1 provides that "Congress established the VASRD as the standard under which percentage rating decisions are to be made for disabled military personnel." Army Regulation 635–40, Appendix B–1. Appendix B–3 states that the VA and Army apply the

VASRD somewhat differently: "Unlike the VA, the Army must first determine whether or not a soldier is fit to reasonably perform the duties of his office.... Once a soldier is determined to be physically unfit for further military service, percentage ratings are applied to the unfitting conditions from the VASRD." Army Regulation 635–40, Appendix B–3. Thus, once a soldier is determined to be unfit, the VASRD ratings are applied.

Appendix B–107 of the Regulation details the VASRD ratings for "Mental disorders." Section B–107e(3) provides as follows: "(3) *Considerable at 50 percent* (a) Mentally competent to handle financial affairs and to participate in PEB proceedings. (b) Intermittent hospitalization. (c) Overtly displays some signs or symptoms of mental illness, such as ... delusions.... (d) requires constant medications or psychotherapy. (e) extreme job instability. (f) Significant social maladjustment." Army Regulation 635–40, Appendix B–107e(3).

As distinguished from the 50% disability characteristics, section B–107e(4) provides: "*Definite at 30 percent* (a) Does not require hospitalization. (b) Displays some signs or symptoms of mental illness on examination. (c) Usually requires medication and or psychotherapy. (d) Usually there is job instability. (e) Borderline social adjustment." Army Regulation 635–40, Appendix B–107e(4).[2]

Mr. Poole contends, and the court agrees, that Mr. Poole meets the criteria for a 50% disability rating under Regulation 635–40. There is no dispute that the military has determined that Mr. Poole is not fit for service. Thus, the sole issue is whether the PEB properly applied the criteria from Regulation 635–40 for a 50% rating. First, consistent with the 50% rating, the evidence in the AR demonstrates that Mr. Poole was hospitalized for psychiatric reasons in 1996 and 2001. The government has not disputed this fact. Mr. Poole was hospitalized once before his discharge for depression and, apparently, once thereafter for recurring delusional problems. Under the Army Regula-

2. The government acknowledges that Mr. Poole received 50% disability pay while he was temporarily deemed disabled by the Army. Service members who are placed on temporary disability are automatically given 50% of their base pay until they are removed from the temporary list or given a permanent disability retirement. *See* Army Regulation 635–40, Appendix C–10, C–12.

tion, a 30% rating is not appropriate for servicemen who have been hospitalized for mental health problems. Thus, with respect to the criterion regarding hospitalizations, Mr. Poole should have been given a 50% rating.

Next, Army Regulation 635–40 provides that a 50% rating is appropriate if the service member's symptoms are overt. Here, it is not disputed that Mr. Poole overtly displayed delusional and paranoid behavior on multiple occasions. The record indicates that he was overtly delusional when his condition was first identified and the record indicates that he has suffered from delusional behavior since his discharge. By contrast, the criteria for a 30% rating indicate that symptoms are identifiable only upon examination. Because Mr. Poole's symptoms were overt, he meets the 50% rating for this criterion as well.

The record also establishes that Mr. Poole requires constant medication, has had extreme job instability (apparently he could not work for several years) and suffers from significant social maladjustment. These factors also are consistent with a 50% rating. The Army indicated that he had "considerable" social and industrial impairment. Dr. Worth, who submitted a letter in support of Mr. Poole, indicated that Mr. Poole is socially isolated and can handle only 20 hours a week of menial labor, "which is well below his intellectual potential and employment experience." Psychological Report of Worth at 5. The Regulation indicates that a 30% rating is appropriate for service members who may be on medication and may have some job instability. However, a 30% rating is only appropriate where the evidence suggests only "borderline social adjustment." There is no dispute in this case that Mr. Poole's social impairment is "considerable."

In *Sawyer v. United States*, 930 F.2d 1577, 1581 (Fed.Cir.1991) the Federal Circuit stated that both review boards and correction boards are "competent to make a disability determination." Here, the ABCMR failed to properly evaluate the record evidence in light of the criteria set forth in Army Regulation 635–40. The record established that Mr. Poole met the criteria for a 50% disability rating under Army Regulation 635–40 and

that his 30% rating was not consistent with the regulations. In such circumstances, the decision of the ABCMR not to amend Mr. Poole's disability rating was arbitrary and capricious.

**2. The ABCMR's Decision Regarding Mr. Poole's Diabetes is Supported by the Administrative Record**

Mr. Poole also argues that the ABCMR erred in failing to provide him with additional disability payments based on his diabetes. Mr. Poole argues that he had diabetes before his discharge, that the Army erred in failing to diagnose his diabetes based on the glucose levels indicated on his blood tests, and that, because of his diabetes, Mr. Poole is entitled to an increased disability rating. Mr. Poole seeks a 30% increase in his disability rating for his diabetes.

For the reasons set forth below, the court finds that Mr. Poole has failed to meet his burden of proof regarding his diabetes claim. It is clear from a review of the record that Mr. Poole did not submit sufficient evidence to support his claim. He never submitted medical evidence to show that he was in fact suffering from diabetes at the time he was discharged from the military. Mr. Poole simply submitted tests that established that he could have had diabetes at that time. Mr. Poole has also failed to submit medical evidence to show that his noninsulin-dependent diabetes was sufficiently severe in 1998 as to have rendered him unfit for service and therefore entitled to a disability rating.

As noted above, to qualify for a disability retirement benefit, the Army must first determine that a soldier is not fit for service. Army regulations provide that diabetes does not necessarily make a soldier unfit for service. Army Regulation 635–40, Appendix B–98, entitled, "Diabetes mellitus" provides that: "[w]ith adequate compliance, many diabetics are fit with minimum profile restrictions. This is particularly true of ... non-insulin dependent [diabetics] ... even though insulin is prescribed for optimum control." Army Regulation 635–40, Appendix B–98. In other words, diabetes is not, in and of itself, considered a sufficiently disabling disease so as to warrant an automatic disability rating.

The soldier must have specific proof that his diabetes in fact renders him unfit for service and, additionally, is of such severity as to warrant a disability rating.

The court agrees with the government that, because Mr. Poole failed to prove that he had diabetes at the time of his discharge and that his diabetes would have warranted a disability rating, Mr. Poole has failed to show how the ABCMR erred. Based on the record presented, the ABCMR's refusal to amend Mr. Poole's disability rating to account for his diabetes was not arbitrary or capricious.

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The government's motion for judgment on the administrative record is **GRANTED IN PART** and **DENIED IN PART**. The plaintiff's cross motion for judgment on the administrative record is **GRANTED IN PART** and **DENIED IN PART**. The case shall be **REMANDED** to the ABCMR for further proceedings consistent with this decision.